In re Griffiths.

[Cite as In re Griffiths (1975), 47 Ohio App. 2d 238.]

(No. 75 C. A. 27—Decided September 30, 1975.)

*Mr. Robert J. Kalafut,* for appellants, Guy and Catherine DiCarlo.

*Mr. Frank P. Anzellotti, Jr.,* for appellees, Luther and Barbara Griffiths.

LYNCH, P. J. This case arose out of a complaint filed by Guy and Catherine C. DiCarlo, natural maternal grandparents of subject minor against Luther Griffiths, natural father of such minor, and his present wife, Barbara A. Griffiths who adopted such minor, for reasonable companionship or visitation rights pursuant to R. C. 3109.11. Guy and Catherine DiCarlo are appealing the decision of the judge of the juvenile division of the Court of Common Pleas denying the prayer of the Complaint.

The natural mother of the subject minor was Marie Louise DiCarlo, the only child of Guy and Catherine C. DiCarlo. On September 20, 1959, Marie eloped at the age of eighteen and married Luther G. Griffiths and gave birth to their only child, Alan Guy Griffiths, the subject minor, on December 6, 1961. She died in September 1964. In October 1965, Luther married Barbara Griffiths, who adopted the subject minor in April 1966.

The evidence supports the findings of the trial court that Luther and Marie married against the wishes of her parents, Guy and Catherine DiCarlo; that the DiCarlos reconciled themselves to the marriage but that the relationship between Luther and his in-laws was strained, at best; that at the time of the marriage, Luther and Marie were without financial resources; that they lived with Mr. and Mrs. DiCarlo for over a year before moving into separate quarters; that about a year after the baby's birth Marie secured employment outside her home; and that for over a year thereafter, the DiCarlos took care of the child during the week days when Luther and Marie were at work.

After Marie's death, the relationship between Luther and Mr. and Mrs. DiCarlo went from bad to worse. In August 1965, Luther terminated the child's visits with Mrs. Catherine C. DiCarlo, and in January 1966 he terminated the visitation rights of Mr. Guy DiCarlo with his grandchild. Cards sent by Mr. and Mrs. DiCarlo to the child on Christmas, Easter and the minor's birthday were returned to them unopened by the Griffiths.

In 1972, Mr. and Mrs. DiCarlo instituted an action for the purpose of obtaining visitation rights to their grand-

240

son. Prior to the conclusion of testimony, the parties reached a written agreement dated December 14, 1972, under which Mr. Guy DiCarlo was allowed visitation with his grandson for one hour per month at the home of the parents; Mrs. Catherine C. DiCarlo was allowed no visitation privileges unless the minor subsequently agreed to it and all visitation privileges would be cancelled if such minor determined that he did not wish such visitation to continue. ·

From January 1973 through September 1974, Mr. Guy DiCarlo visited with his grandson in accordance with the agreement. In October 1974, the minor demanded the termination of such visitation, and his parents then advised Mr. Guy DiCarlo that he could no longer visit the child.

Alan Guy Griffiths is now thirteen years old and was adamant at the trial. He refuses to visit either Mr. or Mrs. DiCarlo. He was against seeing Mr. and Mrs. DiCarlo even before the grandfather's visit in January 1973 because he didn't "know them" and didn't "want to know them." After his several visits with Mr. DiCarlo, he described his grandfather as "obnoxious", and stated that his grandfather's "interests are completely different" from his own.

Appellants' only assignment of error states:

"Where parents of a 13-year-old child have prohibited said child's maternal grandparents from visiting with said child for 9 years and during said period have instilled into said child hatred towards his deceased mother's parents, it is error for the court to rule that it is not in the best interests of said child to visit with his grandparents pursuant to Ohio Revised Code Section 3109.11."

Alan Guy Griffiths stated that he did not want to know Mr. and Mrs. DiCarlo because of the things that he heard about them from his mother and father. His father admitted that any information Alan received about Mr. and Mrs. DiCarlo came from him.

We sympathize with Guy and Catherine C. DiCarlo. They are respectable persons who love their only grandchild and have tried every way to visit him and to convey their love to him. They have made him the primary bene-

ficiary of their property in their wills. Yet their grandson rejects them completely. Undoubtedly, the decision of the parents of the minor to terminate the visitation rights of such grandparents in 1965 and 1966 is the basic reason for Alan's present attitude towards his grandparents.

The parents of Alan have apparently matured. They testified that they no longer object to Alan visiting Guy and Catherine C. DiCarlo, and that they urged Alan to comply with the agreement that they made with the DiCarlos. Alan testified that the only reason that he visited Mr. DiCarlo is because his mother and father wanted him to do so.

The prolonged litigation in this case has resulted in the parents of Alan being somewhat more conciliatory towards visitation rights of Mr. and Mrs. DiCarlo, but the stumbling block is now the subject minor who refuses to visit with them.

We agree with the trial court that the following propositions of law are controlling in this case:

1. In general, the visitation and companionship of a child's grandparents are in a child's best interests.

2. If the father or mother of an unmarried minor child is deceased, R. C. 3109.11 vests in the relatives of the deceased person reasonable companionship and visitation rights to the minor child during its minority and vests in the minor child the right to the companionship and visitation of its relatives.

3. The companionship and visitation rights vested by R. C. 3109.11 are neither absolute nor unqualified but are conditioned upon the finding by a court of competent jurisdiction that such rights are in the best interests of the child.

4. The companionship and visitation rights of relatives granted in R. C. 3109.11 are subservient to the best interests of the minor child.

5. Where a thirteen year old child, rightly or wrongly, resents or dislikes his grandparents to such a degree that court enforced association cannot be reasonably expected to modify his attitude toward them and can only result in an intensification of his resentment and dislike, the

242

usual benefits of visitation and the necessary elements of companionship do not exist and the best interests of the child require the court to deny visitation rights to such grandparents.

Upon a review of the entire record of the case, we agree with the trial court that it would not be in the best interests of Alan Guy Griffiths to permit visitation rights to Mr. and Mrs. DiCarlo as long as his present attitude continues. The record does not disclose whether the subject minor is now permitted to receive mail from Mr. and Mrs. DiCarlo. If not, we hold that he should be permitted to receive such mail.

*Judgment affirmed.*

O'NEILL and DONOFRIO, JJ., concur.