HOLLEY, Appellant,

v.

HIGGINS, Appellee.

[Cite as *Holley v. Higgins* (1993), 86 Ohio App.3d 240.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1116.

Decided Feb. 9, 1993.

Brenda B. Alleman, for appellant.

Dennis C. Belli, for appellee.

*Philip Churchill,* Public Defender, *David L. Strait* and *Sue Bennett,* guardian ad litem.

---

BOWMAN, Judge.

Michelle Binca Higgins is the daughter of the late Mayme Alicia Higgins ("Lisa") and appellant, Ronald Holley. Michelle was born in 1984 at the Ohio Reformatory for Women, where Lisa was incarcerated. At the time of Michelle's birth, Marcella Griffin, Lisa's mother, was contacted by Franklin County Children Services and asked if she wanted Michelle. Griffin, who was already providing care for Lisa's two other children, Nathan and Ursula, indicated her willingness to care for Michelle. Griffin drove to Marysville to pick up Michelle. She also picked up Lisa who had been released from Marysville prior to the expiration of her sentence.

Sometime in November 1987, Lisa, who was living with a friend in Cincinnati, came to Columbus and asked Griffin if she could take Michelle for the weekend. Griffin permitted her to take Michelle on the condition that she bring the child back at the end of the weekend. During that weekend, Lisa was arrested and jailed in Cincinnati. Lisa's friend, Rosetta Graham, telephoned Griffin and asked her to pick Michelle up because she could not care for Michelle alone. At the time, Griffin's automobile was not working, so she called appellant and asked him to get Michelle for her. Appellant complied but, when he returned to Columbus, he did not return Michelle to Griffin. Griffin made attempts through the police department and the night prosecutor's office to obtain Michelle; however, she was unsuccessful.

Unbeknownst to Griffin, appellant had obtained legal custody of Michelle as a result of a voluntary agreement with Lisa. Appellant had visited Lisa, who was in jail in Cincinnati, and had taken papers granting him custody of Michelle which Lisa, who was illiterate, signed without the advice of counsel. No hearing was held on the custody complaint and an entry was submitted to the juvenile court without a hearing to determine whether both parties were aware of their rights and responsibilities. At the time she signed the papers, Lisa believed that, regardless of the papers, appellant was going to permit Michelle to visit her and Griffin. After appellant had custody of Michelle, Lisa visited with her on three occasions and some of Michelle's half-siblings visited with her once; however, Griffin did not see Michelle.

On September 21, 1991, Lisa died of a drug overdose. Griffin contacted appellant and asked him to bring Michelle to the funeral; however, appellant refused. On October 15, 1991, Griffin filed a motion requesting visitation privileges with her granddaughter.

A hearing was held on April 29, 1992, before a referee of the court. At the hearing, evidence was presented which showed that Griffin was a loving, caring parent who was not only raising her own son, but was also raising Lisa's four other children. The evidence showed that Griffin provided the children with a good home and was open to discussing the children's problems and concerns. Griffin has attempted to educate Lisa's children about their mother and her drug problem. Griffin also attempted to help Lisa deal with her drug problem; however, although she was unsuccessful in helping Lisa, the evidence showed that she had successfully helped others overcome their drug dependency and move on with their lives.

Griffin acknowledged that she had been incarcerated for grand theft in 1974. She also indicated that she had received aid for dependent children benefits ("ADC") for Lisa's children when she had temporary custody of them and that, beginning in January 1992, she had received ADC benefits for her grandchildren under a case opened in her own name. This included receiving benefits for Michelle for two months, even though Michelle was not living with her. Griffin also testified that, although she does not trust appellant, she would be willing to work with him on a visitation arrangement and that she would keep her feelings about appellant separate from Michelle and not influence the respect that she has for her father.

Appellant testified that he did not believe it would be in Michelle's best interest to have visitation with Griffin because she was deceiving and arrogant. Appellant also questioned whether Griffin abused Michelle because, when he went to pick Michelle up in Cincinnati, Michelle had a black eye. Appellant also testified that he did not believe he could work with Griffin in interacting with the child, although he did not have an objection against Michelle and her half-siblings visiting with one another. At the hearing, Michelle's half-siblings, Nathan and Ursula, testified that they missed Michelle and wanted to see her. Appellant also testified that he had not told Michelle about her mother's death because he did not feel that Michelle could deal with it at the present time.

The referee rendered her report and recommended that Griffin's motion for visitation be granted because visitation would be in Michelle's best interest. The referee also recommended that appellant inform Michelle of her mother's death within one month of the date of the order and that visitation between Griffin and Michelle commence one month from the date of the order, with visitation being coordinated by telephone communication between Griffin and appellant one week prior to the visit.

Appellant filed objections to the referee's report; however, the court overruled the objections and adopted the recommendations of the referee. Appellant now brings this appeal and asserts the following assignments of error:

"1. The trial court erred when it ordered appellant to tell his young daughter that her mother had died of a crack overdose and to send that child to visit with the maternal grandmother who was a convicted felon and who had been receiving ADC for the child although she was not the legal custodian.

"2. The trial court erred when it permitted a court employee to initiate proceedings on behalf of a grandmother when there was no evidence of abuse, neglect or dependency.

"3. The trial court erred when it appointed a private attorney to represent a grandmother who was seeking visitation rights."

In his first assignment of error, appellant asserts that the trial court erred when it ordered visitation between Griffin and Michelle. Appellant asserts that he is in the best position to determine the needs of his daughter and that he should be able to prevent Michelle from being exposed to persons who he believes are undesirable. He also believes that he should be entitled to determine when and how to inform Michelle about her mother's death.

R.C. 3109.11 provides that, if either the father or mother of an unmarried minor child is deceased, the common pleas court may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with the child if the court determines that the granting of the companionship or visitation rights is in the best interest of the child. To determine whether to grant a person reasonable companionship or visitation rights, the court is to consider all relevant factors including, but not limited to, the factors set forth in R.C. 3109.051(D).[1] Since the trial court has discretion in determining whether to

---

1. The factors which the court is to consider are:

(1) The prior interaction and interrelationships of the child and his/her parents, siblings and relations.

(2) The geographical location between the places where the child resides and the place where he/she is to visit, and the distance involved between them.

(3) The available time for visitation including consideration of employment and school schedules as well as vacation and holiday schedules.

(4) The child's age.

(5) The child's adjustment to school, community and home.

(6) The wishes and concerns of the child, if the court has interviewed the child in chambers.

(7) The child's health and safety.

(8) The amount of time available for the child to spend with siblings.

(9) The physical and mental health of all the parties.

(10) The willingness of the parties to reschedule missed visitation and to facilitate the visitation.

(11) Whether either parent has been convicted of, or plead guilty to, any criminal offense involving any act that resulted in a child being an abused or neglected child, or acted in a manner that resulted in the child being an abused or neglected child or been determined to be the perpetrator of an abusive or neglectful act.

grant visitation, an abuse of discretion must be shown in order for an appellate court to reverse the trial court. Thus, the trial court's decision must be unreasonable, arbitrary or unconscionable to merit reversal. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

The standard a court must use in making its decision whether to order visitation is to determine whether the visitation is in the child's best interest. *In re Whitaker* (1988), 36 Ohio St.3d 213, 522 N.E.2d 563. In general, grandparent visitation is in a child's best interest. *In re Griffiths* (1975), 47 Ohio App.2d 238, 1 O.O.3d 307, 353 N.E.2d 884.

In this case, the trial court adopted detailed factual findings and took into account the factors set out in R.C. 3109.051(D). The record reflects that Griffin has cared for Michelle's siblings without incident and has been a good parent to them. The record also reflects that Griffin is willing to supervise Michelle, work with appellant and comply with all orders of the court regarding Michelle's welfare. Appellant's assertion that Griffin's conviction for grand theft disqualifies her from visitation with Michelle is misplaced. Griffin paid her debt to society more than sixteen years ago and the record indicates that she has been a model citizen and mother since then. Further, the offense for which she was convicted did not result in a child being abused or neglected within the parameters set forth in R.C. 3109.051(D)(12) and, thus, was not an issue for consideration by the trial court.

This court finds that the trial court's decision to allow visitation between Griffin and Michelle is supported by a substantial amount of credible and competent evidence and is not against the manifest weight of the evidence. See *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178; see, also, *Trickey v. Trickey* (1952), 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772. This court also finds that the trial court did not abuse its discretion in compelling appellant to tell Michelle about her mother's death. It is in Michelle's best interest to know what happened to her mother and such information would be best learned from a concerned parent than from some other source, such as her half-siblings. Accordingly, appellant's first assignment of error is not well taken.

In his second assignment of error, appellant asserts that the trial court erred when it permitted a court employee to initiate proceedings on Griffin's behalf

---

(12) Whether the person who has requested visitation has been convicted of, or plead guilty to, a crime involving any act which resulted in a child being an abused or neglected child and whether the parent had been convicted of, or plead guilty to, a domestic violence crime.
(13) Whether a parent has continuously and willfully denied another visitation in accordance with a court order.
(14) Whether a parent has established, or is planning to establish, a residence outside Ohio.
(15) Any other factor in the best interest of the child.

when there was no evidence of abuse, neglect or dependency. Appellant asserts that the court employees are to investigate and file complaints on behalf of children who were abused, neglected or dependent and, since there were no such allegations in this case, the court employee's action in filing a motion for visitation on behalf of Griffin was clearly improper.

In *Republic Steel Corp. v. Bd. of Revision of Cuyahoga Cty.* (1963), 175 Ohio St. 179, 23 O.O.2d 462, 192 N.E.2d 47, the court held that issues which were not raised or tried in the lower court cannot be raised for the first time on appeal. *Miller v. Wikel Mfg. Co.* (1989), 46 Ohio St.3d 76, 545 N.E.2d 76. A review of the record indicates that appellant did not raise this issue in the court below and, for that reason, we decline to rule upon it on appeal. *Moats v. Metro. Bank of Lima* (1974), 40 Ohio St.2d 47, 69 O.O.2d 323, 319 N.E.2d 603. Accordingly, appellant's second assignment of error is not well taken.

In his third assignment of error, appellant asserts that the trial court erred when it appointed an attorney to represent Griffin. Appellant asserts that Griffin does not fall into a classification of indigent persons for whom an attorney should be appointed.

■ Juv.R. 4(A) provides:

" * * * *Every party* shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. *These rights shall arise when a person becomes a party to a juvenile court proceeding.* When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child." (Emphasis added.)

In *Lowry v. Lowry* (1988), 48 Ohio App.3d 184, 549 N.E.2d 176, the court held that Juv.R. 4(A) and R.C. 2151.312 guarantee the right to counsel for all indigent parties in juvenile court proceedings.

Although appellant asserts that Griffin is not entitled to representation, there is no evidence in the record showing that appellant objected or took issue with counsel being appointed when Griffin requested it. The record contains an entry appointing Griffin, a party in this proceeding, an attorney because she was without funds to retain an attorney herself. However, there is no transcript of the December 17, 1991 hearing, during which Griffin's request for counsel was raised.

■ Appellant has the duty to provide a transcript for appellate review and also bears the burden of showing error by reference to the matters in the record. When portions of the transcript necessary for resolution of assigned errors are omitted from the record, this court has nothing to pass upon. *Columbus v.*

*Hodge* (1987), 37 Ohio App.3d 68, 523 N.E.2d 515.   See, also, *Volodkevich v. Volodkevich* (1989), 48 Ohio App.3d 313, 549 N.E.2d 1237.   Further, in the absence of all the relevant evidence, this court must indulge the presumption of regularity of the proceedings and the validity of the judgment of the trial court. Thus, in the absence of an adequate record, this court is unable to evaluate the merits of appellant's third assignment of error and must affirm the trial court's decision.   *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384.   Accordingly, appellant's third assignment of error is not well taken.

Based on the foregoing, appellant's three assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

TYACK and McCORMAC, JJ., concur.

JOHN W. McCORMAC, J., retired, of the Tenth Appellate District, sitting and hearing the appeal pursuant to active duty prior to his retirement.