OPINION
The present appeal arises from the decision of the Jefferson County Court of Common Pleas granting appellees Billie and Ronald Brake, Sr., the paternal grandparents, visitation with their grandchild. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
On January 24, 1990, Kelly (Brake) Wilson ("appellant") and her then common-law husband, Ronald Brake, Jr., were divorced. Pursuant to the court's entry granting the divorce, appellant was granted custody of the parties' minor child, Kacy Marie Brake. Additionally, Mr. Brake was granted visitation with the minor child and was ordered to pay child support to appellant. Mr. Brake's visitation originally consisted of two days of overnight visitation per week which was to be exercised on days which he did not have to work. Said visitation was subject to the condition that appellant could request that Mr. Brake not exercise his visitation one week out of every month. Additionally, Mr. Brake was granted standard holiday visitation, two three week periods of summer vacation and one full week of additional visitation to be exercised separate from the summer vacation. The terms of Mr. Brake's visitation were modified by the trial court via its May 24, 1990 judgment entry when it was determined that appellant would have rights of visitation similar to those of Mr. Brake when the seven weeks of visitation were exercised.
During the course of the next five years, appellees enjoyed liberal access to their granddaughter. It is undisputed that appellees played an integral role in the young girl's upbringing as they frequently provided babysitting services for both Mr. Brake and appellant. Additionally, appellees oftentimes kept the child overnight, transported her to medical appointments, volunteered at the child's school and took her on vacations. However, this arrangement came to an end in approximately September of 1995 when Mr. Brake initiated proceedings in an attempt to be named the residential parent of his daughter. The end result of these proceedings was a decision by the trial court to permit appellant to continue as the residential parent. During this period of time, appellant ceased using appellees for babysitting purposes and similarly did not permit Kacy to visit appellees unless it was during Mr. Brake's visitation.
Due to the fact that appellees were seeing substantially less of their granddaughter as a direct result of appellant's actions, a motion to intervene and to establish visitation was filed by appellees on January 25, 1996. Through these motions, appellees requested that court ordered visitation be established with their granddaughter. A hearing was held by the trial court to address appellees request on March 11 and 12, 1996. In addition to the testimony and evidence submitted at the hearing, the trial court conducted an in chambers interview with the minor child in order to determine her wishes and concerns.
Following the hearing, the trial court issued findings of fact in which it was decided that the best interest of the minor child would be served if visitation were established with appellees. The trial court's decision was based upon the strong interaction which had developed between the parties as well as a consideration of the factors listed in R.C. 3109.051(D). The trial court memorialized its decision through its March 26, 1996 judgment entry whereby appellees were granted one day of overnight visitation per week which was ordered not to interfere with Mr. Brake's two days of visitation. Additionally, the court provided that appellees would be permitted to take their granddaughter on a one week vacation as they had done in the past so long as the minor child maintained A's and B's in school. It is from this decision that appellant filed a timely notice of appeal on April 24, 1996.
 II. ASSIGNMENT OF ERROR
Appellant alleges a single assignment of error on appeal which reads as follows:
"THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING SUCH EXTENSIVE VISITATION TO THIRD PARTY INTERVENERS/APPELLEES."
Under this assignment of error, appellant does not attack the ability of the court to grant visitation rights to appellees but rather contests the amount of visitation which was awarded. The basis for this argument is that appellees originally requested visitation for one night a week from 3:00 p.m. until 8:00 p.m. on a day in which appellant was working. Despite this request, the trial court granted one day of overnight visitation per week plus one full week during the year in order to take Kacy on vacation. In light of the total amount of available time due to work schedules, school and extra-curricular activities, appellant asserts that too extensive a period of visitation was ordered by the trial court. By awarding one day per week rather than the five hours per week originally requested, appellant's time with her child is argued to have been drastically reduced to the point where there is not ample quality time. The consequences of the trial court are argued to be particularly burdensome in light of the fact that the court ordered that appellees visitation not interfere with Mr. Brake's two days of visitation. Hence, the entire period of time which was granted to appellees comes at the expense of appellant's time with the child. Appellant further asserts that if the trial court desired to grant such extensive visitation, it should have placed at least part of the burden upon Mr. Brake.
A. STANDARD OF REVIEW
Decisions involving visitation are within the sound discretion of the trial court and upon review, an appellate court will not disturb such a decision absent a showing of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Buckles v. Buckles (1988),46 Ohio App.3d 102, 108. Furthermore, in matters involving visitation, the trial court must exercise its discretion in a manner that protects the best interests of the child. Bodine v.Bodine (1988), 38 Ohio App.3d 173, 175.
 B. APPLICABLE LAW
As the Ohio Supreme Court recognized in the case of In reWhitaker (1988), 36 Ohio St.3d 213, grandparents had no legal rights of access to their grandchildren at common law. Id. at 214. The ability of grandparents to visit their grandchildren was determined by the parents' willingness to extend the privilege.Id. As can be imagined, this approach was prone to abuse as the best interest of the child did not necessarily come into play in determining whether visitation would be permitted. However, Ohio as well as the overwhelming majority of states have since created a statutory right of grandparent visitation. The statutory provision which is relevant to the present case is R.C. 3109.051
(B) which states as follows:
 "(1) In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent, if all of the following apply:
 (a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.
 (b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.
 (c) The court determines that the granting of companionship or visitation rights is in the best interest of the child."
The Ohio Supreme Court further clarified when grandparent visitation rights vest when it stated that only the occurrence of a disruptive, precipitating event will trigger visitation. In reGibson (1991), 61 Ohio St.3d 168, 169 citing In re Whitaker,supra at 215. For instance, absent parental death or divorce, the common law view of deferring to parental autonomy will be observed. Id. So long as the natural parents of the child remained married and living throughout the child's lifetime, grandparents could be foreclosed from visiting with the child.Id. at 170. However, once such a disruptive event occurs, grandparents may petition for and receive visitation rights if it is determined that the child's best interest would be served by facilitating visitation. In determining whether visitation is in the child's best interest, a trial court shall consider the factors itemized in R.C. 3109.051 (D). The factors which are relevant to the present proceeding are as follows:
 "(D)(1) The prior interaction and interrelationships of the child with the child's parents, siblings and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
 (2) The geographical location of the residence of each parent and the distance between those residences, and if the person who requested companionship or visitation is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
 (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
(4) The age of the child;
 (5) The child's adjustment to home, school, and community;
 (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to visitation by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested the companionship or visitation, as to a specific visitation schedule, or as to other visitation matters, the wishes and concerns of the child, as expressed by the court;
(7) The health and safety of the child;
 (8) The amount of time that will be available for the child to spend with siblings;
(9) The mental and physical health of all parties;
 (10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights, and if the person who requested companionship or visitation is not a parent, the willingness of that person to reschedule missed visitation;
* * *
 (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;
* * *
 (15) Any other factor in the best interest of the child."
It should be noted that this court has long held that in general, the visitation and companionship of a child's grandparents are in a child's best interest. In re Griffiths
(1975), 47 Ohio App.2d 238, 241. See, also, Holley v. Higgins
(1993), 86 Ohio App.3d 240, 245 citing In re Griffiths, supra andIn re Whitaker, supra at 216.
 C. ANALYSIS
A review of the record in the case at bar reveals that the trial court did not err in its grant of visitation to appellees. While appellees could not maintain an action for visitation while Mr. Brake's marriage to appellant remained intact, once the disruptive event of a divorce occurred, their rights to visitation formally vested. In re Gibson and In re Whitaker,supra. Appellant concedes this fact when she states that the trial court did not err in granting visitation to appellees but rather erred in granting the amount of visitation which it did. In light of the disruptive event's existence, this court need only focus on R.C. 3109.051(D) to determine whether the trial court abused its discretion as related to the amount of visitation granted to appellees.
Based upon the trial court's thorough consideration of the situation before it, this court similarly cannot hold that the trial court abused its discretion in ordering a greater amount of visitation than that initially requested by appellees. The trial court's decision is well supported not only by the analysis presented in the court's findings of fact and judgment entry but also by the evidence and testimony submitted to the court. Hence, this court is not in a position to substitute its judgment for that of the trial court on the issue of the best interest of the child. Buckles, supra.
In applying the factors set forth in R.C. 3109.051(D). the trial court took painstaking efforts to assure that all relevant factors were weighed and considered in order to determine what would serve the best interest of the minor child. As to R.C.3109.051(D)(1), the trial court specifically found that the minor child had a strong interaction and interrelationship with appellees as well as with her parents and siblings. The court based this finding as related to appellees upon evidence and testimony which established that the child spent a considerable amount of time with appellees during her formative years. During this period of time, appellees frequently had taken the child to school, brought her home from school, assisted her with homework assignments and kept her overnight. Testimony during the hearing further established that the minor child had spent portions of as many as 200 days with appellees during the preceding calendar year. The frequency of appellees' interaction with the child was determined to have facilitated the development of a strong bond, the continuance of which was in the child's best interest. Appellant went so far as to admit during the hearing that appellees had played an "integral" role in the child's life.
In turning to R.C. 3109.051(D)(2), the trial court found that the geographical location of the parties fostered visitation as they lived within a relatively short distance of one another. Appellees' testimony at the hearing supports this conclusion as they stated that appellant lives less than one mile from their home. Additionally, appellees stated that they would be willing to transport their granddaughter to and from appellant's home for visitation purposes so as to decrease any burden on appellant.
Despite appellant's contention that the trial court failed to properly consider the available quality time of the parties, the facts set forth in the record lead us to a different conclusion. As required by R.C. 3109.051(D)(3), the trial court analyzed the amount of available time of all parties in reaching its ultimate decision. The court recognized that both Mr. Brake and appellant were employed full time outside of the home. Furthermore, the court noted that since Mr. Brake's work schedule varied and in light of the fact that he was only granted a total of six days visitation in a four week period, his visitation period conformed with his days off of work. The trial court also noted that the mother had the opportunity to choose each month which weekend she would have the minor child. It was also found that the minor child attended elementary school five days a week from 8:00 a.m. to 2:40 p.m. The recitation of these facts illustrates that the trial court considered the parties' available time when establishing appellees' visitation.
In addition to these facts, the record in the case at bar supports the trial court's decision to order that appellees' visitation not interfere with Mr. Brake's two days of visitation. Due to the fact that Mr. Brake only has visitation a total of six days per month, on average appellant is left with twenty-four days per month to enjoy the companionship of her daughter. Furthermore, according to appellant's testimony, her work week consists of two twelve hour shifts and two eight hour shifts. Appellant's employer schedules the majority of her twelve hour shifts on weekends as it is aware that this is when Mr. Brake is normally able to exercise his visitation rights. Based upon these circumstances, appellant is in a far better position to facilitate visitation than Mr. Brake due to the amount of available time allotted to each party. In that appellees' day of visitation has been ordered to occur during the middle of the week after the minor child has attended school, appellant will realistically suffer a very minimal decrease in the amount of "quality" time available. On the contrary, if the trial court had permitted appellees' visitation to interfere with Mr. Brake's visitation, Mr. Brake would have suffered a drastic reduction in available time due to the minimal time he has been provided by prior court order.
Having dealt with the available time of the parties, the trial court next addressed the age of the child as provided by R.C.3109.051(D)(4). The court noted that while the minor child was only nine years of age, she was of sufficient mental ability to recognize the nature of the proceedings and to express her wishes as related to the issue of visitation. It was then noted that the minor child was generally well adjusted to the various home environments to which she was exposed as well as to her school and her community. R.C. 3109.051(D)(5). However, the court did indicate that the present conflicts regarding visitation had apparently had an adverse impact on the child's grades. The basis for these conclusions were the testimony of the parties and the trial court's in chamber interview with the child as permitted by R.C. 3109.051(D)(6). In addition to gathering this information, the trial court concluded via its in chamber interview that its determination as to grandparent visitation coincided with the wishes and desires of the child.
The trial court went on to state that generally the child's health and safety were satisfactory. R.C. 3109.051(D)(7). As to R.C. 3109.051(D)(8) and the amount of time available to spend with siblings, the court concluded that the remaining days which the child would spend at appellant's residence would provide an ample opportunity for interaction with her half-brother. The court specifically recognized that Mr. Brake's time in addition to appellees' time did not create an unreasonable arrangement, especially when considering the number of family units which were involved in the matter.
It was further found by the trial court that none of the parties experienced mental or physical health difficulties which would have a bearing on whether or not to permit visitation with the minor child. R.C. 3109.051(D)(9). Similarly, the court noted that it was not made aware of any acts of abuse or neglect by appellees which would forbid visitation. R.C. 3109.051(D)(12). Finally, the court took issue with appellant's admitted reluctance to facilitate visitation with appellees. R.C.3109.051(D)(10). The basis for this conclusion was appellant's statements during the hearing that she was unwilling to permit her daughter to visit with appellees with the exception of any visitation which occurred during Mr. Brake's court ordered time. Appellant indicated that she maintained this position despite the fact that there was a sizable decrease in the amount of available time between the child and appellees. Additionally, appellant stated that this decrease has caused alarm to the minor child and is contrary to the child's expressed desire to see appellees more frequently. Such an attitude was found to be unreasonable in that the child had such a close past relationship with appellees.
Based upon this exhaustive analysis of the factors set forth in R.C. 3109.051(D), the trial court concluded that it was in the child's best interest to visit with appellees one night per week in addition to a one week vacation. In looking to the court's reasoning, this court is not in a position to reverse the trial court's decision as it was not unreasonable, arbitrary or unconscionable. Despite the fact that the visitation which was granted exceeded that which was originally requested, the trial court cannot be held to have abused its discretion if the ordered visitation was in the child's best interest. Bodine, supra. In the present case, it is clear that this paramount concern was vigilantly protected by the trial court.
As the trial court determined and as appellant admits, appellees played an integral part in the child's life. As a result of the divorce and appellant's subsequent steps to limit the child's exposure to appellees, there was a drastic decrease in the interaction between these parties. As the trial court noted, to permit such an important and influential bond to be eroded would create adversity far more severe than the drop in school grades which the child was currently experiencing.
As to the amount of time granted to appellees by the trial court, such also served to advance the best interest of the child. By permitting one overnight stay per week rather than the five hours originally requested, the trial court provided an opportunity to interact which was more in line with that experienced previously between the parties. Regarding the one week of vacation time granted by the trial court, this time will similarly provide the child with an opportunity to enjoy those experiences with appellees which she had grown accustomed to in the past. While appellant may take issue with the fact that appellees' period of visitation has come at the sole expense of her own visitation, the existence of that fact does not equate to an abuse of discretion. As previously discussed, Mr. Brake was not in a position to provide the appropriate amount of time for appellees to interact with the child as he was only granted a total of six days per month of his own visitation. If the court were to cut into this period, the child would have then been left with insufficient time to interact with her father. On the contrary, appellant was allotted the remaining twenty-four days per month as residential parent and was thus better positioned to accommodate the four days of visitation per month granted to appellees. Furthermore, in viewing appellant's work schedule in conjunction with the time granted to appellees, a significant reduction will not be experienced by appellant. Appellant should come to the realization that based upon the child's expressed desire to see appellees more frequently, the trial court had the best interest of the child in mind when making its decision.
Considering the extensive efforts taken by the trial court in complying with the statute in an attempt to protect the best interest of the minor child, we cannot hold that the trial court abused its discretion. The court provided a comprehensive, well-reasoned basis for its decision to grant the period of visitation to appellees pursuant to the conditions outlined in its entries.
For the foregoing reasons, the decision of the trial court is affirmed in its entirety.
COX, P.J., concurs.
DONOFRIO, J., concurs.
APPROVED:
 ___________________________ JOSEPH J. VUKOVICH, JUDGE