{¶ 1} Appellants/cross-appellees, Gary Harrold and Carol Harrold (the "Harrolds"), appeal, and appellee/cross-appellant, Brian S. Collier, cross-appeals, from the decision of the Wayne County Court of Common Pleas, Juvenile Division. We reverse and remand
 I. {¶ 2} This appeal concerns a challenge to the Harrolds' visitation rights with their granddaughter, Brittany Collier ("Brittany"). Custody of Brittany and grandparental visitation rights were the subject of a prior appeal to this Court, pursuant to which we issued a decision and journal entry on July 31, 2002.Harrold v. Collier, 9th Dist. No. 02CA0005, 2002-Ohio-3864. In that decision, this Court recounted the underlying substantive facts, as follows:
"Renee Harrold [("Renee")] and [Mr.] Collier were in a dating relationship, but the couple never married. They are the biological parents of one child, Brittany Collier, who was born to them on July 28, 1997. During her pregnancy, Renee was diagnosed with cancer and she chose not to undergo treatment until after Brittany's birth. Both Renee and Brittany lived with Renee's parents, Carol and Gary Harrold. On June 2, 1998, Renee and [Mr.] Collier submitted an agreement to the court concerning an allocation of parental rights between them for Brittany. The agreement designated Renee the sole residential parent and ordered a supervised visitation schedule for [Mr. Collier] with Brittany.
"Renee died of cancer on October 10, 1999, and her parents were designated Brittany's legal custodians on an ex parte basis on October 12, 1999. On October 21, 1999, [Mr. Collier] agreed to grant the Harrolds temporary legal custody of Brittany, and she continued to live with her grandparents. [Mr. Collier] has exercised his visitation rights with Brittany throughout her life. He also filed two motions with the court between 1998 and 2000 to modify his visitation sessions. In May of 2001, [Mr. Collier] filed a motion for full custody of Brittany. On December 12, 2001, the trial court held a modification of custody hearing among [the Harrolds], and [Mr. Collier], awarding custody of Brittany to [Mr. Collier]." Id. at ¶ 2-3.
 {¶ 3} When the trial court awarded custody of Brittany to Mr. Collier, it also included an order of visitation rights for the Harrolds. A visitation schedule was to be filed with the court and commence as soon as the custody transition occurred.
 {¶ 4} In a decision and journal entry dated July 31, 2002, this Court, inter alia, affirmed the trial court's award of custody of Brittany to Mr. Collier. Harrold at ¶ 15. This Court also found that the trial court was without authority to award grandparental visitation to the Harrolds because the Harrolds had not yet asserted these rights pursuant to R.C. 3109.11 and3109.12. Id. at ¶ 24.
 {¶ 5} The Harrolds filed a motion for grandparental visitation rights and payment of medical expenses for Brittany. A hearing was held on this matter, pursuant to which a magistrate issued a decision granting the Harrolds temporary grandparental visitation, and stating that an automatic stay of the judgment was precluded. Thereafter, the trial court entered a judgment entry granting the Harrolds visitation with Brittany.
 {¶ 6} Mr. Collier filed objections to the magistrate's decision granting grandparental visitation and denying an automatic stay of the visitation order. Mr. Collier attested that the trial court violated his constitutional rights to raise his child as he sees fit when, despite his objection, it granted the Harrolds visitation with Brittany.
 {¶ 7} Thereafter, the Harrolds filed a motion for contempt against Mr. Collier for failure to abide by the trial court's visitation order. The trial court granted this motion and found Mr. Collier in contempt.[1] Thereafter, the Harrolds filed another motion for contempt against Mr. Collier after he refused to allow the Harrolds their court-ordered visitation with Brittany. The trial court also granted this motion and again found Mr. Collier in contempt of court.
 {¶ 8} Thereafter, the trial court entered a judgment on Mr. Collier's objections to the magistrate's decision granting temporary grandparental visitation and refusing to stay the visitation order. The trial court sustained Mr. Collier's objections and denied visitation between the Harrolds and Brittany. This appeal followed.
 {¶ 9} The Harrolds timely appealed, asserting three assignments of error for review, and Mr. Collier timely cross-appealed, asserting two cross assignments of error.
 II. A. First Assignment of Error
"The trial court erred as a matter of law in dismissing the maternal grandparents' petition for visitation with their granddaughter."
 {¶ 10} In their first assignment of error, the Harrolds contend that the trial court erred in denying their request for visitation with Brittany. Specifically, the Harrolds aver that the trial court erred as a matter of law in its interpretation and application of United States Supreme Court's decision inTroxel v. Granville (2000), 530 U.S. 57, 147 L.Ed.2d 49, to the instant case. We agree with the Harrolds' averment that the trial court erred in its interpretation and application of Troxel to this case.
 {¶ 11} While a trial court's determinations of fact are given great deference, questions of law are reviewed by an appellate court de novo. Wayne Mut. Ins. Co. v. Parks, 9th Dist. No. 20945, 2002-Ohio-3990, at ¶ 13. As a preliminary matter, we observe that on appeal, neither party expressly and directly questions the constitutionality of Ohio's statutes governing grandparental visitation rights. However, the parties' arguments center on the Supreme Court's holding in Troxel. Essentially, the Harrolds argue that Troxel can be factually distinguished from the present case in a few respects, and that therefore the decision in Troxel does not apply to deny them visitation rights in this case. Mr. Collier retorts that the Troxel
decision is controlling in this case, because a grant of grandparental visitation rights to the Harrolds would be an absolute infringement on his fundamental right to raise Brittany. Because the parties' arguments revolve around the constitutional issues raised in Troxel, they must necessarily enter into our discussion.
 {¶ 12} The fundamental right of parents to the care, custody, and control of their children is well established, and was reiterated the Supreme Court in Troxel. Troxel,530 U.S. at 66. "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id.; Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 372. Furthermore, the Supreme Court recognized the "traditional presumption that a fit parent will act in the best interest of his or her child." Troxel, 530 U.S. at 69, citingParham v. J.R. (1979), 442 U.S. 584, 602, 61 L.Ed.2d 101.
 {¶ 13} The Supreme Court of Ohio has observed that grandparents had no legal right of access to their grandchildren at common law. In re Martin, 68 Ohio St.3d 250, 252,1994-Ohio-506, citing In re Whitaker (1988), 36 Ohio St.3d 213,214. Additionally, the Supreme Court has held that "grandparents have no constitutional right of association with their grandchildren." Martin, 68 Ohio St.3d at 252, citing In reSchmidt (1986), 25 Ohio St.3d 331, 336. Furthermore, the Court has proclaimed that grandparental visitation rights can only be conferred by statute. Martin, 68 Ohio St.3d at 252, citingWhitaker, 36 Ohio St.3d at 217. Ohio statutes allow grandparental visitation only if it is in the grandchild's best interest. Id.
 {¶ 14} In Troxel, the Supreme Court assessed the constitutionality of the State of Washington's nonparental visitation statute. The Supreme Court described the statute in its decision, noting that the statute allowed any person to request the court, at any time, to grant visitation, and specified as the only requirement for granting such visitation that it serve the child's best interests. Troxel,530 U.S. at 67. In a plurality opinion, the Court held that the statute, as applied in that case, was unconstitutional, because of the statute's "sweeping breadth." Id. at 73.
 {¶ 15} The Harrolds urge us to conclude that the decision inTroxel does not apply to the instant case because the Ohio statute sections governing grandparental visitation rights are distinguishable from the Washington statute in Troxel. The Harrolds argue that the Ohio statutes are not sweepingly overbroad, that the statutes limit the persons that can seek visitation rights, and that they give weight to the parents' wishes regarding visitation. We agree with the Harrolds' contention that the Troxel case is distinguishable from the instant case on these bases.
 {¶ 16} In this case, the trial court relied on R.C. 3109.11,3109.12, and 3109.051 to assess the issue of the Harrolds' visitation rights.[2] R.C. 3109.11, which governs companionship or visitation rights where a parent of the child is deceased, provides the following, in pertinent part:
"If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in [R.C. 3109.051(D)]."
R.C. 3109.12, parenting time, companionship or visitation rights where mother is unmarried, provides, in relevant part:
"(A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. * * *
"(B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the * * * companionship or visitation rights is in the best interest of the child. In determining whether to grant * * * reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in [R.C. 3109.051(D)]."
Thus, unlike the Washington statute in Troxel, the Ohio statute sections governing grandparental visitation rights do not allow any person, at any time, to seek visitation, and in that sense are not "sweepingly overbroad."
 {¶ 17} R.C. 3109.051(D) provides many factors that a court must consider in granting or denying visitation rights to a grandparent, relative, or other person. However, R.C.3109.051(D)(15) does specifically require a court to consider, "[i]n relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court[.]" Therefore, Ohio statutes do require consideration of the parents' preference with respect to nonparental visitation. Thus, we find that the Washington statute in the Troxel case is distinguishable from the comparable Ohio statutes, and that therefore the holding inTroxel does not apply to invalidate the Ohio statutes.
 {¶ 18} We observe that the plurality in Troxel solely held that the "sweeping overbreadth" of the Washington statute deemed it unconstitutional. However, the plurality also mentioned the weight to be afforded a fit parents' decision regarding nonparental visitation. Specifically, the Court stated that the Washington statute "failed to accord the determination of [the fit custodial parent] any material weight." Troxel,530 U.S. at 72. Additionally, the Court noted that the trial court's "slender findings" in support of the visitation order, along with the "court's announced presumption in favor of grandparent visitation" contributed to the deficiencies in that case. Id. The Court further stated, "if a fit parent's decision [concerning the care, custody, and control of their children] becomes subject to judicial review, the court must accord at least some specialweight to the parent's own determination." (Emphasis added.)Troxel, 530 U.S. at 70. However, a careful reading of theTroxel plurality opinion indicates that this additional language is solely dicta. In fact, the plurality opinion specifically noted the following:
"Because we rest our decision on the sweeping breadth of [the Washington statute] and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court — whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context. * * * [T]he constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best `elaborated with care.' Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter." (Citations omitted.) Troxel,530 U.S. at 73.
 {¶ 19} In its judgment entry denying the Harrolds' request for grandparental visitation rights, the trial court found, that, pursuant to an application of the relevant factors enumerated in R.C. 3109.051(D)(15),
"[Mr.] Collier has made it perfectly clear that he does not wish visitation between Brittany and the [Harrolds]. His wishes are to be considered, but the best interests of Brittany in maintaining a relationship with [the Harrolds] outweigh that consideration. [Mr.] Collier has stated on the record that he will resist visitation, which will likely create confusion for Brittany, but that is outweighed by the relationship which she has with [the Harrolds.]"
However, the court then proceeded to discuss the Troxel case, as follows:
"The Court in Troxel, by a 6-3 decision upheld the Supreme Court of Washington State which overturned grandparent visitation for the parent of a deceased parent. The decision consisted of many separate opinions, but all agreed that grandparent visitation in such cases was not unfettered. Essentially, the consensus appears to be that a grandparent's right to visitation, over the objection of the parent, must be subject to strict scrutiny by the trial court so as to give deference to the wishes of a natural parent and minimize interference by third parties on how a parent can raise a child. * * *
"* * *
"Troxel did not define `special weight', but the Oliver Court found a definition, * * * saying that it is . . . very strong term signifying deference.' Essentially, a parent's wishes will be overcome only by a compelling state interest supported by overwhelmingly clear circumstances." (Internal citations omitted.)
While the trial court determined that a review of the relevant factors "seem[ed] to support visitation with the [Harrolds] over the objection of [Mr. Collier,]" it ultimately concluded that, based upon Troxel, "there is insufficient proof in the record to find that there are overwhelmingly clear circumstances to overrule the wishes of the parent, [Mr.] Collier."
 {¶ 20} In light of the narrow holding of the Supreme Court inTroxel, we must conclude that the trial court erred as a matter of law in its interpretation and application of the decision inTroxel. Therefore, we sustain the Harrolds' first assignment of error, and reverse and remand this case to the trial court for assessment of the Harrolds' visitation under the applicable Ohio Revised Code statutes.
 B. Second Assignment of Error
"The trial court's decision to dismiss the harrolds' petition for visitation with their granddaughter, after the court stated that grandparent visitation was in the minor child's best interest, is against the manifest weight of the evidence."
 Third Assignment of Error
"The trial court committed an abuse of discretion by dismissing the petition for visitation rights with their granddaughter."
 {¶ 21} In their second and third assignments of error, the Harrolds contend that the trial court abused its discretion in denying them grandparental visitation rights, and that this decision was also against the manifest weight of the evidence.
 {¶ 22} Because of our determination above with respect to the Harrolds' first assignment of error, we need not address their second and third assignments of error, as they are now rendered moot. See App.R. 12(A)(1)(c).
 C. First Cross-Assignment of Error
"The trial court erred as a matter of law in determining that the automatic stay provisions of juvenile rule 40(e)(4)(C) were inapplicable[.]"
 Second Cross-Assignment of Error
"The trial court committed an abuse of discretion by determining that the automatic stay provisions of juvenile rule 40(e)(4)(C) were inapplicable[.]"
 {¶ 23} In his first and second cross-assignments of error, Mr. Collier avers that the trial court erred as a matter of law and abused its discretion in determining that the automatic stay provisions of Juv.R. 40(E)(4)(c) did not apply to stay the execution of the interim visitation order entered into by the trial court, pursuant to which the court found Mr. Collier in contempt of that order. Mr. Collier questions the trial court's decision not to stay the execution of the May 13, 2003 order granting the Harrolds visitation rights, thereby attempting to collaterally challenge the trial's court order finding Mr. Collier in contempt.
 {¶ 24} Initially, a magistrate issued a decision recommending that Mr. Collier be found in contempt of the court's May 13, 2003 order. The same day, the trial court issued an order that adopted the magistrate's decision and found Mr. Collier in contempt. However, our review of the record indicates that Mr. Collier failed to file objections to the magistrate's decision finding him in contempt. Juv.R. 40(E)(3)(d) provides, "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." In re Etter Young (1998), 134 Ohio App.3d 484, 492, citing Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 121; Quist v. Phillips
(Mar. 6, 2002), 9th Dist. No. 20761.
 {¶ 25} Because Mr. Collier did not present these arguments to the trial court through properly filed objections to the magistrate's contempt decision, he cannot now assign error to the trial court's finding of contempt. See Juv.R. 40(E)(3)(d). Accordingly, Mr. Collier's first and second cross-assignments of error are overruled.
 III. {¶ 26} The Harrolds' first assignment of error is sustained. The Harrolds' second and third assignments of error are not addressed. Mr. Collier's first and second cross-assignments of error are overruled. The decision of the Wayne County Court of Common Pleas, Juvenile Division, is reversed, and the cause is remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Carr, P.J., Whitmore, J., concur.
[1] Mr. Collier appealed to this Court from the trial court's finding of contempt. We dismissed Mr. Collier's appeal for failure to file a brief.
[2] It is undisputed that R.C. 3109.11 and 3109.12 are applicable to the instant case, as Renee was unmarried at the time that Brittany was born and had also passed away at the point that the Harrolds sought visitation with Brittany.