OPINION
{¶ 1} Appellant, William Keller, appeals the decision of the Hardin County Court of Common Pleas granting visitation to his child's maternal grandmother, appellee, Sharon Spivey.
 {¶ 2} Keller and his former wife, Diane, were married on April 29, 1995, and one child, Alec, was born as issue of the marriage on December 1, 1999. The marriage ended when Diane unexpectedly passed away in November 2001. Keller retained sole custody of Alec.
 {¶ 3} Before Diane's passing, Spivey, Alec's grandmother (Diane's mother), was overtly involved in Alec's life. Since Diane's death, however, Keller has remarried, and the time Spivey spends with her grandson has diminished. Keller continuously suggested that Alec would be allowed to spend time with Spivey but requested that she not seek a court order requiring visitation rights. Nevertheless, Spivey initiated this action in order to obtain legally protected visitation rights pursuant to R.C. 3109.11 and 3109.051. Keller defended his parental choice by arguing that the statute in question was unconstitutional. The Attorney General intervened as a nonparty pursuant to R.C.2721.12 to defend the statute's constitutionality.
 {¶ 4} In the hearing for visitation rights, Keller stated that he did not want visitation rights established because (1) he did not want a court order issued and (2) he felt the statute creating grandparent visitation rights was unconstitutional. The magistrate heard this testimony, as well as additional testimony from Keller, Spivey, and other relations and recommended Spivey be granted visitation rights. The magistrate's decision was adopted by the common pleas judge. Keller appeals from the court's decision and sets forth three assignments of error. For the sake of judicial economy, the first and third assignments will be consolidated into one argument; analysis of the second assignment will follow.
 First and Third Assignments of Error A custodial parent, whether single or married, has afundamental right to privacy in child-rearing decisions.
 The trial court erred in ordering ORC Section 3109.11 asfacially constitutional and constitutional as applied.
 {¶ 5} At the outset, we note that the Ohio appellate courts seem to be divided over whether R.C. 3109.11 is constitutional. See Oliver v. Feldner (2002), 149 Ohio App.3d 114 and Frazierv. Frazier (2003), 4th Dist. No. 02CA8, 2003-Ohio-1087 (holding R.C. 3109.11 unconstitutional); on the other hand, See Baker v.Baker (2003), 12th Dist. No. CA2002-04-008, 2003-Ohio-731 (holding that the factors announced in R.C. 3109.051 satisfy the requirements outlined in Troxel v. Granville); In reTalkington (2004), 5th Dist. No. 2003CA00226, 2004-Ohio-4215 andHarrold v. Collier (2004), 9th Dist. No. 03CA0064,2004-Ohio-4331 (holding R.C. 3109.11 constitutional). The dispute, however, revolves around the interpretation of Troxelv. Granville (2000), 530 U.S. 57, 120 S.Ct. 2054 (plurality opinion), and its application to the statutes in question.
 {¶ 6} In Troxel, the United States Supreme Court held that a Washington law that permitted "any person" at "any time" to petition a court for visitation rights was unconstitutional as applied to the particular facts of the case. Id. at 73. In writing for the plurality, Justice O' Connor determined that the law was unconstitutional as applied because of its "sweeping breadth." Id. In making its determination, the Court recognized that parents have a "fundamental right . . . to make decisions concerning the care, custody, and control of their children."Id. at 65-66 (citing Meyer v. Nebraska (1923), 262 U.S. 390,399, 43 S.Ct. 625; Prince v. Massachusetts (1944),321 U.S. 158, 166, 64 S.Ct. 438; Stanley v. Illinois (1972),405 U.S. 645, 651, 92 S.Ct. 1208; Washington v. Glucksberg (1997),521 U.S. 702, 720, 117 S.Ct. 2258).
 {¶ 7} However, after concluding that parental rights for visitation falls within the protection of substantive due process, the Court limited its ruling by stating that, as applied, the lower Washington courts did not take into account, or give special weight to, a fit parent's decision to allow others visitation time with their children, which is a Due Process requirement. Id. at 69-70. The Court, in summation, explicitly announced that the Troxel ruling does not "define . . . the precise scope of the parental due process right in the visitation context." Id. at 73.
 {¶ 8} Although the Troxel Court did not expressly analyze the constitutionality of the Washington law under a "strict scrutiny" analysis, Id. at 81 (J. Thomas, concurring), the general rule is that when challenged legislation impinges on a fundamental constitutional right, courts must examine the statute under strict scrutiny analysis, i.e. the statute that challenges the fundamental right is unconstitutional unless it is necessary to promote a compelling governmental interest and is narrowly tailored to achieve that result. See Perry Edn. Assn. v. PerryLocal Educators' Assn. (1983), 460 U.S. 37, 45, 103 S.Ct. 948;Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 423,633 N.E.2d 504. Moreover, Ohio courts have decided the issue based on whether the Ohio law is more narrowly tailored than the law in Washington, see Oliver, supra; Frazier, supra; Baker,
supra; In re Talkington, supra; Harrold, supra, and whether a trial court provides "special weight" to parental decisions.Id.
 {¶ 9} In two cases which find the grandparent visitation law unconstitutional, i.e. Oliver, supra and Frazier, supra, the Seventh and Fourth Districts concluded that the trial courts in those cases did not afford the parent's decision to withhold visitation rights the "special weight" necessary to fulfill theTroxel requirements. Oliver, supra, at 126 ("It is clear fromTroxel that the `special weight' that must be given to a parent's childrearing decisions has constitutional implications, and to overcome that `special weight,' there must be some showing of compelling reasons and circumstances to disregard that parent's wishes."); Frazier, supra, at ¶ 27 ("Furthermore, although the language of the statute does not elevate any one of the factors above the others, Troxel makes it clear that . . . the wishes and concerns of the parent, are to be accorded special weight." (internal citations and quotations omitted)). Moreover, both courts' opinions rely heavily on the fact that the trial courts below did not give any weight to the parents' wishes.Oliver, supra, at 127 ("[I]t appears as though the trial court substituted its own judgment as to [the grandchild's] best interests and gave no weight at all to [the parent's] expressed wishes"); Frazier, supra, at ¶ 27 ("In its judgment entry, the trial court clearly stated that it was not `elevating' appellant's wishes above any of the other factors for consideration.").
 {¶ 10} On the other hand, two cases from the Fifth and Ninth Districts conclude that the sixteen factor inquiry outlined in R.C. 3109.051 is narrowly tailored to allow a trial court to fulfill the "special weight" requirement in Troxel, as well as, balance the best interest of the child. In re Talkington,
supra; Harrold, supra ("Upon review, we conclude R.C. 3109.11
does not violate the dicta of Troxel because the statute provides for the wishes of the parents to be considered as well as the best interests of the child."). For example, both courts note that R.C. 3109.51(D) specifically requires a court to give the requisite weight to a parent's choice to refrain from visitation. Harrold, supra, at ¶ 17; In re Talkington, supra, at ¶ 31.
 {¶ 11} Whereas the Washington statute gave nearly unlimited discretion to a trial court to award visitation rights "to anyone" at "any time," the Ohio statute specifically requires a trial judge to review several factors that support the Troxel
ruling. The Ohio statute states in relevant part:
In determining whether to grant parenting time to a parentpursuant to . . . section 3109.11 . . . the court shall considerall of the following factors:
 (1) The prior interaction and interrelationships of the childwith the child's parents, siblings, and other persons related byconsanguinity or affinity, and with the person who requestedcompanionship or visitation if that person is not a parent,sibling, or relative of the child;
 (2) The geographical location of the residence of each parentand the distance between those residences, and if the person isnot a parent, the geographical location of that person'sresidence and the distance between that person's residence andthe child's residence;
 (3) The child's and parents' available time, including, butnot limited to, each parent's employment schedule, the child'sschool schedule, and the child's and the parents' holiday andvacation schedule;
 (4) The age of the child;
 (5) The child's adjustment to home, school, and community;
 (6) If the court has interviewed the child in chambers,pursuant to division (C) of this section, regarding the wishesand concerns of the child as to parenting time by the parent whois not the residential parent or companionship or visitation bythe grandparent, relative, or other person who requestedcompanionship or visitation, as to a specific parenting time orvisitation schedule, or as to other parenting time or visitationmatters, the wishes and concerns of the child, as expressed tothe court;
 (7) The health and safety of the child;
 (8) The amount of time that will be available for the child tospend with siblings;
 (9) The mental and physical health of all parties;
 (10) Each parent's willingness to reschedule missed parentingtime and to facilitate the other parent's parenting time rights,and with respect to a person who requested companionship orvisitation, the willingness of that person to reschedule missedvisitation;
 (11) In relation to parenting time, whether either parentpreviously has been convicted of or pleaded guilty to anycriminal offense involving any act that resulted in a child beingan abused child or a neglected child; whether either parent, in acase in which a child has been adjudicated an abused child or aneglected child, previously has been determined to be theperpetrator of the abusive or neglectful act that is the basis ofthe adjudication; and whether there is reason to believe thateither parent has acted in a manner resulting in a child being anabused child or a neglected child;
 (12) In relation to requested companionship or visitation by aperson other than a parent, whether the person previously hasbeen convicted of or pleaded guilty to any criminal offenseinvolving any act that resulted in a child being an abused childor a neglected child; whether the person, in a case in which achild has been adjudicated an abused child or a neglected child,previously has been determined to be the perpetrator of theabusive or neglectful act that is the basis of the adjudication;whether either parent previously has been convicted of or pleadedguilty to a violation of section 2919.25 of the Revised Codeinvolving a victim who at the time of the commission of theoffense was a member of the family or household that is thesubject of the current proceeding; whether either parentpreviously has been convicted of an offense involving a victimwho at the time of the commission of the offense was a member ofthe family or household that is the subject of the currentproceeding and caused physical harm to the victim in thecommission of the offense; and whether there is reason to believethat the person has acted in a manner resulting in a child beingan abused child or a neglected child;
 (13) Whether the residential parent or one of the parentssubject to a shared parenting decree has continuously andwillfully denied the other parent's right to parenting time inaccordance with an order of the court;
 (14) Whether either parent has established a residence or isplanning to establish a residence outside this state;
 (15) In relation to requested companionship or visitation by aperson other than a parent, the wishes and concerns of thechild's parents, as expressed by them to the court;
 (16) Any other factor in the best interest of the child.
R.C. 3109.051(D).
 {¶ 12} In our view, the sixteen factor analysis set forth in R.C. 3109.051(D) clearly permits a trial judge to satisfy theTroxel dicta and afford "special weight" to a parent's decision to decline grandparent visitation rights. Moreover, given the range and specificity of these factors, the trial court can not only afford parental decisions the requisite "special weight," it can also take into consideration the best interest of the child in question and balance that interest against the parent's choice. Thus, we concur with the Fifth and Ninth Districts that R.C. 3109.051 and 3109.11 are constitutional within the parameters of the Troxel decision.
 {¶ 13} In the case sub judice, the trial court, after weighing and hearing all the testimony, evaluated each factor outlined in R.C. 3109.051(D) and its impact on Keller, Spivey, and Alec in order to determine whether to grant Spivey visitation time with Alec. In its Findings and Opinions, the trial court concluded
[Keller's] answers demonstrate that he is agreeable to contactbetween [Spivey] and Alec. The terms, however, appear to posedifficulties. It is apparent 1) that relations are strained; 2)that [Keller] resents Court interference with his parentalrights; 3) that visitation between [Spivey] and Alec will be atrisk without an order. . . . The Court is reluctant to interferewith parental decisions and is of the opinion that suchinterference ought not to be done without substantialjustification. However, after considering all of the factorsmandated by [R.C. 3109.051(D)] . . . and after giving specialweight to the wishes and concerns of Alec's parents, which go tothe nature, quality, and duration of the visitation rather thanto its prohibition, the Court finds that it is in the bestinterest of the child [to allow] visitation. . . .
The trial court, therefore, did afford Keller's decision to limit court ordered visitation the "special weight" required byTroxel but ultimately decided that despite the "special weight," Spivey should be granted some visitation rights because it was in Alec's best interest. Additionally, the trial court's sixteen factor analysis in this case, which does appropriately weigh the parental interest, even seems to align with Oliver
and Frazier since the trial courts in those cases did not appear to take into account the parent's wishes at all.
 {¶ 14} In sum, we conclude that even though a parent's childrearing decision has been recognized as a fundamental right, R.C. 3109.11 and 3109.051 are sufficiently and narrowly tailored to take into account the "special weight" necessary to satisfyTroxel's substantive due process requirements. Furthermore, as applied in this case, the trial court did afford Keller's interest the "special weight" required by Troxel, but decided that interest was outweighed by Alec's interest to spend some time with his maternal grandmother. We, therefore, join the Fifth and Ninth Districts in concluding that R.C. 3109.11 and R.C.3109.051 are constitutional and further find that those statutes were properly applied in this case. Keller's first and third assignments of error are overruled.
 Second Assignment of Error The trial court's decision to grant appellee visitation underORC Section 3109.11 with the appellant's minor child constitutedan abuse of discretion by the trial court.
 {¶ 15} In general, an appellate court will not disturb a trial court's decision regarding visitation rights absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142,144, 541 N.E.2d 1028. "Abuse of discretion" is more than an error of judgment or law; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 16} In the instant case, we conclude that the trial court did not abuse its discretion when assigning visitation rights to Spivey. The trial court, in its Findings and Opinions, carefully reviewed and applied each of the sixteen factors stated in R.C.3109.051(D), as well as interpreted that statute in light ofTroxel. In particular, we note the trial court's finding that the parental concerns went to the "nature, quality, and duration of the [grandparent's] visitation rather than to its prohibition." Thus, the trial court's analysis after hearing and weighing the evidence submitted cannot be deemed unreasonable, arbitrary, or unconscionable. Keller's second assignment of error is overruled.
Judgment Affirmed.
 Cupp, J., concurs.