JOURNAL ENTRY AND OPINION
{¶ 1} Mother, A.F.,[1] appeals from an order of the Juvenile Court that granted visitation rights of her minor son to her mother, L.F. She claims that the court abused its discretion and decided against the manifest weight of the evidence when it failed to give deference to her wishes to deny visitation. We affirm.
 {¶ 2} The record reveals that in August 1999, nineteen-year-old A.F. gave birth to a son, J.F. Since she was a college student at the time, A.F. and her son moved in with her mother, L.F., so that the family could help raise the baby and A.F. could continue attending college. For the next four years, A.F.'s mother and four sisters helped with childcare duties and babysitting, and A.F. continued her education. J.F.'s father has had no relationship, financial or otherwise, with A.F. or his son, and has never established paternity.
 {¶ 3} Sometime between June and August 2003, A.F. moved out of her mother's house and began living with her then forty-eight-year-old boyfriend, S.T. Shortly after leaving her mother's home, A.F. terminated all contact with her mother and sisters due, in part, to a dispute over alleged comments made to J.F. regarding his mother's relationship and living arrangement. As a result of this termination of contact and visitation, L.F. filed a motion for grandparent companionship rights in January 2004.
 {¶ 4} Following a five-day trial, the magistrate awarded L.F. visitation rights and established a visitation schedule. A.F. objected to the decision; however, the court overruled all objections and affirmed the magistrate's decision. A.F. appeals from this order in the assignments of error set forth in the appendix to this opinion.
 {¶ 5} A.F. claims the court abused its discretion in finding that grandparent visitation was in the child's best interest, and that it failed to give the proper weight to her wishes regarding visitation.
 {¶ 6} At the time of J.F.'s birth, A.F. was nineteen years old and unmarried. As such, visitation is governed by R.C. 3109.12, which states:
"(A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. * * *
(B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child. In determining whether to grant reasonable parenting time rights or reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 [3109.05.1] of the Revised Code. Divisions (C), (K), and (L) of section 3109.051
[3109.05.1] of the Revised Code apply to the determination of reasonable parenting time rights or reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section."
 {¶ 7} In determining whether a child's best interest would be served by facilitating visitation with the grandparents, a trial court must consider the factors enumerated in R.C. 3109.051(D). Oliver v. Feldner,
Noble App. No. 271, 2001-Ohio-3535. R.C. 3109.051(D) provides:
(D) In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors: (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child; (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence; (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) The age of the child; (5) The child's adjustment to home, school, and community; (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court; (7) The health and safety of the child; (8) The amount of time that will be available for the child to spend with siblings; (9) The mental and physical health of all parties; (10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation; (11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25
of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child; (13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (14) Whether either parent has established a residence or is planning to establish a residence outside this state; (15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court; (16) Any other factor in the best interest of the child."
 {¶ 8} In accordance with the statute, and before reaching its decision, the court outlined and discussed each factor as required under R.C. 3109.051(D). (Magistrate's Decision at 5-8). It then made detailed findings as to the nature of the conduct considered before awarding visitation to L.F. In addition to several other findings, the magistrate noted the grandmother's strong, positive bond with J.F., and her daily care of the child since his birth. Moreover, the court noted that the guardian ad litem recommended that the child's best interests would be served by an award of visitation rights to his grandmother.
 {¶ 9} A.F. disputes several of the court's findings of fact, and appears to argue that the court's determination is against the manifest weight of the evidence. She claims that she moved from her mother's home in June 2003, not August as the court surmised, and asserts that the Cuyahoga County Department of Children and Family Services found the allegations of neglect unsubstantiated. She further claims the court incorrectly found that her mother lives with her daughters, when in fact she lives alone. She also claims error in the court's determination that no physical or mental inability prevented L.F. from caring for J.F. and in finding no health and safety hazards.
 {¶ 10} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983. Under a manifest weight standard, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Martin (1983), 20 Ohio App.3d 172; See, also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. "Every reasonable presumption must be made in favor of the judgment and the findings of facts [of the juvenile court]." Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350, citing Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. Furthermore, "`if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.'" In re T.W., Summit App. No. 21594, 2003-Ohio-7185, quotingKarches, supra at 19. "[B]efore an appellate court will reverse a judgment as being against the manifest weight of the evidence, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice." In re Heatherly, Summit App. No. 20925, 2002-Ohio-3028.
 {¶ 11} Despite any alleged factual errors, there was ample evidence presented at trial to support A.F.'s departure from her mother's home in June, as there was ample evidence for the court to weigh through the testimony of L.F. and her daughters regarding the child's health and safety in the care of his grandmother and the grandmother's physical and mental ability to care for her grandchild. As to any issue of the credibility of A.F. and L.F., the assessment of credibility is a matter which lies within the sound discretion of the trier of fact, and an appellate court will not reverse that assessment unless the testimony in question is completely lacking in credibility. See State v. Darroch
(Dec. 10, 1993), Lake App. No. 92-L-104. The juvenile court did not abuse its discretion in finding the testimony of L.F. and other witnesses as more credible than that of A.F. Moreover, since there was some competent, credible evidence supporting the court's finding, its judgment was neither an abuse of discretion or against the manifest weight of the evidence.
 {¶ 12} In her second assignment of error, A.F. claims the juvenile court unconstitutionally applied R.C. 3109.12 and R.C. 3109.051(D) by failing to give the proper weight to her wishes to deny visitation. She cites to Troxel v. Granville (2000), 530 U.S. 57, 120 S.Ct. 2054, for the proposition that, "the Due Process clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."
 {¶ 13} In Spivey v. Keller (Dec. 13, 2004), Hardin County App. No. 6-04-09), 2004-Ohio-6667, the court interpreted the holding in Troxel,
supra, and found that, "[T]he sixteen factor analysis set forth in R.C. 3109.051(D) clearly permits a trial judge to satisfy the Troxel dicta and afford `special weight' to a parent's decision to decline grandparent visitation rights." The court went on to find, "[G]iven the range and specificity of these factors, the trial court can not only afford parental decisions the requisite `special weight,' it can also take into consideration the best interest of the child in question and balance that interest against the parent's choice."
 {¶ 14} A.F. is correct in her assertion that R.C. 3109.051(D)(15) specifically requires a court to consider, "in relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court[.]" See, also, Estate of Harrold v. Collier, Wayne App. No. 03CA0064, 2004-Ohio-4331. Therefore, the wishes and concerns of the child's parents regarding grandparent visitation must be elevated above other factors, which are otherwise afforded equal weight. Oliver v.Feldner, 149 Ohio App.3d 114, 2002-Ohio-3209, citing Troxel, supra. However, in reaching its decision, the court analyzed each of the required R.C. 3109.051(D) factors and specifically noted that it had reviewed both the mother and grandmother's visitation wishes. It also reviewed the report submitted by the child's guardian ad litem. When pronouncing its visitation schedule, the court emphasized that the guardian ad litem's recommendation was that the child's best interests would be served by an award of companionship and visitation rights to the maternal grandmother, L.F. (Magistrate's Decision at 8). The court stressed that the guardian ad litem's recommendation was entered after meeting with the child's mother, grandmother, and the child himself, and after having access to each expert witness and their reports, in addition to the guardian ad litem's own participation throughout the trial. (Magistrate's Decision at 8). Further, it is clear from both the Magistrate's Decision and the trial court's entry adopting this decision, that the court considered both the mother's and maternal grandmother's proposed visitation schedules before entering its decision, in addition to its thorough analysis under R.C. 3109.051(D).
 {¶ 15} We see no indication that the court abused its discretion in awarding visitation rights to the maternal grandmother, and further find that the decision was supported by ample evidence presented at trial.
 {¶ 16} We find that A.F.'s first and second assignments of error lack merit.
 {¶ 17} The decision of the trial court is affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze JR., P.J., Concurs
 McMonagle, J. Dissents (See Separate Dissenting Opinion Attached.
 APPENDIX ASSIGNMENTS OF ERROR:
 "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THATGRANDPARENT VISITATION WAS IN THE BEST INTEREST OF J.F. [NAME OMITTED] ASSAID FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BYUNCONSTITUTIONALLY APPLYING SECTION 3109.12 AND SECTION 3109.051(D) OFTHE OHIO REVISED CODE WHEN IT FAILED TO GIVE ANY SPECIAL WEIGHT TO THERESPONDENT-APPELLANT'S WISHES REGARDING VISITATION."
 COURT OF APPEALS OF OHIO, EIGHTH DISTRICT COUNTY OF CUYAHOGA NO. 85242
IN RE: : J.F.
 : DISSENTING
 :
 : OPINION
DATE: SEPTEMBER 15, 2005
[1]This court protects the identity of parties in juvenile cases.