IN RE MARTIN.

[Cite as *In re Martin* (1994), 68 Ohio St.3d 250.]

(No. 92–1865–Submitted September 28, 1993—Decided February 9, 1994.)

*Isaac, Brant, Ledman & Becker, Randy S. Kurek* and *Angela K. Plummer,* for appellants.

*Burech &˙ Sargus* and *Edmund A. Sargus, Jr.,* for appellees.

*Albers & Albers* and *James S. Albers,* urging reversal for *amicus curiae,* National Council for Adoption.

———————

A. WILLIAM SWEENEY, J. In the instant cause, we are again requested to consider whether Ohio law permits grandparent visitation rights subsequent to an adoption. In the case of *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 574 N.E.2d 1055, we held that R.C. 3107.15[1] does not permit visitation by grandparents after adoption by strangers. Here, we are asked to consider post-adoption visitation where the child has been adopted by grandparents.

By way of background, we note that this court has observed that at common law, grandparents had no legal rights of access to their grandchildren. *In re Whitaker* (1988), 36 Ohio St.3d 213, 214, 522 N.E.2d 563, 565. In addition we have held that grandparents have no constitutional right of association with their grandchildren. *In re Schmidt* (1986), 25 Ohio St.3d 331, 336, 25 OBR 386, 390, 496 N.E.2d 952, 957. This court has also stated that if grandparents are to have visitation rights, they must be provided for by statute, and that the Ohio statutes allow visitation only if it is in the grandchildren's best interest. *Whitaker,* 36 Ohio St.3d at 217, 522 N.E.2d at 567. More recently, in *Ridenour,* 61 Ohio St.3d at 325, 574 N.E.2d at 1061, we observed that R.C. 3107.15 suggests that grandchildren's relationships with their biological grandparents "must be terminated once they are adopted."

———————

1. R.C. 3107.15(A) provides as follows:

"(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, where executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship;

"(2) To create the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted person from their operation or effect."

The General Assembly has authorized grandparent visitation in three situations: (1) in divorce, dissolution, legal separation, or annulment proceedings (R.C. 3109.051); (2) where the parent of the child is deceased (R.C. 3109.11); and (3) where the child is born to an unmarried mother, and the father has either acknowledged paternity of the child pursuant to R.C. 2105.18, or has been determined to be the child's father in an action brought under R.C. Chapter 3111 (R.C. 3109.12[A] ).

The third situation is implicated in the cause *sub judice.* R.C. 3109.12 provides in relevant part:

"(A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. *If a child is born to an unmarried woman and if the father of the child has acknowledged the child pursuant to section 2105.18 of the Revised Code or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child,* the father, the parents of the father, and any relative of the father may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with respect to the child.

"(B) The court may grant the companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the companionship or visitation rights is in the best interest of the child.   * * * " (Emphasis added.)

Appellees presented no evidence that the paternity of Karissa had been established pursuant to the above-emphasized language. Therefore, appellees' son is legally nothing more than the putative father of Karissa. Consequently, under the plain language of R.C. 3109.12, the appellees are not qualified even to seek any court-ordered right to visit their putative biological grandchild, until the alleged paternity of the grandchild is established under either of the methods set forth in the statute. Therefore, the court of appeals below erred in excusing compliance with R.C. 3109.12 in its reversal of the judgment of the trial court.

Nevertheless, given the fact that the paternity of the minor child herein was never seriously questioned in the proceedings below, we deem it appropriate to address the contentions of the parties assuming, *arguendo,* that Bradley Hupp is in fact the father of Karissa Martin. While lack of compliance with R.C. 3109.12 prevents grandparent visitation in the instant factual setting, R.C. 3107.15, as will be explained below, would preclude grandparent visitation even if paternity were established.

In *Ridenour,* 61 Ohio St.3d at 328, 574 N.E.2d at 1063, this court stated that "[a]lthough there may be cases where a child who is adopted by strangers would benefit from continued interaction with his biological grandparents, we cannot permit such a result unless the legislature modifies R.C. 3107.15."

Appellees argue that the policy reasons stated in *Ridenour* concerning the termination of grandparents' visitation after adoptions by strangers are absent in cases where the relevant parties are, as in this case, nonstrangers to the child. Therefore, appellees contend that this court should distinguish between adoptions by strangers and nonstrangers and limit the rationale of *Ridenour* to adoptions by strangers.

With respect to appellees' argument that in determining grandparent visitation rights a distinction should exist between adoptions by strangers and nonstrangers, we noted in *Ridenour,* 61 Ohio St.3d at 327, 574 N.E.2d at 1062, that at least five states (Missouri, California, Massachusetts, Minnesota and Montana) permit grandparent visitation after a stepparent adoption, but specifically terminate or authorize termination of grandparent visitation rights if the child is adopted by a stranger. Moreover, at least one state supreme court appears to have espoused the distinction urged by appellees. See *Lingwall v. Hoener* (1985), 108 Ill.2d 206, 213–214, 91 Ill.Dec. 166, 170, 483 N.E.2d 512, 516. However, we discern no mandate or suggestion to make such a distinction in any of the relevant Ohio statutes, especially R.C. 3107.15, nor do we feel compelled to limit or modify our prior decision in *Ridenour.*

Given the fact that this court has consistently held that grandparent visitation rights are purely statutory in nature, *Whitaker* and *Ridenour, supra,* we believe that any changes in this area of the law must emanate from the General Assembly. While we are mindful of the compelling public policy reasons favoring grandparent visitation rights after adoptions by relatives, see, *e.g., Lingwall, supra,* R.C. 3107.15 simply does not distinguish between adoptions by strangers and nonstrangers.

Therefore, based on all of the foregoing, we reverse the judgment of the court of appeals below and reinstate the trial court's judgment.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., dissents.