OPINION
This matter presents a timely appeal from a judgment rendered by the Noble County Common Pleas Court, acknowledging the paternity of the minor child, Laken Feldner, following the death of the child's alleged father and granting visitation with the minor child to plaintiffs-appellees, Irene Oliver and James Oliver, the paternal grandparents.
On September 16, 1998, John Travis Oliver (the decedent) requested that the Noble County Child Support Enforcement Agency (CSEA) determine the paternity of a minor child born to defendant-appellant, Theresa A. Feldner, on May 6, 1998. Thus, the CSEA initiated paternity proceedings and issued an order requiring that Mr. Oliver, appellant and the minor child appear for genetic tests. Appellant and the minor child submitted to the genetic testing, however, Mr. Oliver died in an automobile accident on October 17, 1998, prior to his submission for testing.
Following Mr. Oliver's death, appellant requested, both verbally and in writing, that the CSEA cease the paternity proceedings and close the case. Conversely, appellees, as the decedent's parents, along with his brother, Kenneth Oliver, sent a notarized statement to the CSEA requesting that genetic testing of the decedent be completed. The CSEA then contacted the county coroner and a blood sample from the decedent was obtained for genetic testing. On November 10, 1998, the CSEA issued an administrative order establishing paternity, as the genetic test results indicated that the decedent was the father of the minor child in question by a 99.87% probability. Appellant then filed objections to the administrative order and further proceedings were stayed pending the outcome of appellees' complaint.
On December 3, 1998, appellees filed a complaint against appellant seeking visitation as paternal grandparents of the minor child. Appellant responded by filing an answer and thereafter, a motion requesting that a home investigation be conducted with regard to appellees. Appellant's motion was granted by the trial court and subsequently, a report was filed by the Guernsey County Department of Children Services indicating that a home investigation was completed and recommending that appellees be granted visitation with the minor child.
On May 27, 1999, appellant filed a motion to dismiss appellees' complaint pursuant to R.C. 3109.051. Appellant's motion was expanded at trial to include R.C. 3109.12. A bench trial in this matter commenced on July 1, 1999. At the outset, the trial court addressed and considered both appellant's objections with regard to the paternity action and her motion to dismiss appellees' complaint. The trial court overruled not only appellant's objections, but also her motion to dismiss and this matter proceeded to a hearing on the merits.
Upon due consideration of the evidence and testimony presented, the trial court filed its journal entry on July 29, 1999. The trial court noted that a parent/child relationship had been determined between the decedent and the minor child and that it would be in the best interest of the minor child to exercise visitation with appellees. Appellant then filed a motion for new trial or alternatively, a motion for relief from judgment, claiming that she had received newly discovered evidence relevant to the issue of the minor child's visitation with appellees. A hearing was held on appellant's motion and the trial court denied same by judgment entry filed November 29, 1999. This appeal followed.
Appellant sets forth seven assignments of error on appeal.
Appellant's first, second and third assignments of error have a common basis in law and fact, will therefore be discussed together and allege respectively as follows:
 "The trial court erred and abused its discretion by overruling the Motion to dismiss as the paternity action was not prosecuted by the decedent's personal representative.
 "The trial court erred and abused its discretion in finding John Travis Oliver to be the natural father of Laken A. Feldner.
 "The trial court erred and abused its discretion in consolidating the paternity action and grandparent visitation action."
Appellant maintains that pursuant to the plain language of R.C.3111.04(A), only the decedent's personal representative could prosecute the paternity action in question following the decedent's death. Given the fact that no personal representative was ever appointed to administer any estate on the decedent's behalf, appellant insists that the paternity action could not reach final determination. As such, appellant submits that the trial court abused its discretion in failing to grant her motion to dismiss, and in concluding that the decedent was the father of the minor child at issue. Appellant relies upon In re Martin (1994),68 Ohio St.3d 250 to support her contentions.
Appellant further states under her third assignment of error that the trial court abused its discretion in consolidating the paternity action and grandparent visitation action. However, other than this blanket assertion, appellant offers no additional argument in support of such claim.
An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
R.C. 3111.04(A) states, in relevant part:
 "An action to determine the existence or nonexistence of the father and child relationship may be brought by * * * a man alleged or alleging himself to be the child's father, the child support enforcement agency of the county in which the child resides if the child's mother is a recipient of public assistance or of services under Title IV-D of the `Social Security Act,' 88 Stat. 2351 (1975), 42 U.S.C.A. 651, as amended, or the alleged father's personal representative."
Additionally, R.C. 3109.12(A) provides, in pertinent part:
 "* * * If a child is born to an unmarried woman and if the father of the child * * * has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, the father, the parents of the father, and any relative of the father may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with respect to the child."
The plain language of R.C. 3111.04(A) sets forth the parties which may appropriately commence a paternity action. The decedent, as the alleged biological father of the minor child in question, properly requested that the CSEA initiate paternity proceedings pursuant to R.C. 3111.04(A). The testimony offered by Pamela Moore from the CSEA clearly indicates that at the time of the decedent's death, all that was necessary to complete the paternity action was genetic testing upon the blood samples drawn prior to the decedent's death from appellant and the minor child, and that which had yet to be drawn from the decedent. Appellees, as the decedent's next-of-kin, merely authorized the withdrawal of a blood sample from the decedent so that the genetic testing in the paternity action could reach its natural conclusion.
Appellant offered no evidence or argument to refute the decedent's actual paternity of the minor child in question. Rather, she simply took issue with the fact that the paternity action itself reached final determination.
Furthermore, appellant's reliance upon Martin, supra is misplaced as inMartin, the Ohio Supreme Court found that the alleged paternal grandparents were not qualified to seek court-ordered visitation with their alleged biological grandchild until such time as the paternity of the grandchild was established by a paternity action. The Ohio Supreme Court in Martin also held that even if the putative father was the father of the child in question, the alleged paternal grandparents were still not entitled to court-ordered visitation with the child as he had been adopted by the maternal grandparents, thereby terminating all legal relationships between the adopted child and his former relatives. Such is not the case in the present matter.
Additionally, by the inclusion of the word "may," the language in R.C.3111.04(A) is discretionary, not mandatory. As the conclusion of cases brought before the court is preferred, it cannot be said that the trial court abused its discretion in overruling appellant's motion to dismiss. The decedent properly commenced a paternity action pursuant to R.C.3111.04(A) and at the time of his death, all that remained to conclude such action was genetic testing upon the blood samples.
Finally, contrary to appellant's blanket assertion that the trial court erred in consolidating the paternity action with the grandparents' visitation action, it is clear that immediately preceding the hearing on appellees' complaint for grandparents' visitation, the trial court heard arguments and addressed appellant's objections to the administrative order issued in the paternity action and thereafter, ruled upon appellant's motion to dismiss the grandparents' visitation action. The arguments set forth by appellant concerning both her objections and motion to dismiss were similar. In order to proceed on the grandparents' visitation action pursuant to R.C. 3109.12(A), it was necessary to first resolve any outstanding objections with regards to the paternity action. As such, the trial court did not err in addressing appellant's objections to the paternity action as a precursor to the hearing on the grandparents' visitation action, and in any event, it did not prejudice the parties by doing so.
Therefore, the trial court did not abuse its discretion in acknowledging that the decedent was the father of the minor child in question, nor in overruling appellant's motion to dismiss the grandparents' visitation action.
Appellant's first, second and third assignments of error are found to be without merit.
Appellant's fourth, fifth and seventh assignments of error have a common basis in law and fact, will therefore be discussed together and allege respectively as follows:
 "The trial court erred and abused its discretion in determining that visitation by the Plaintiffs-Appellees with the minor child is in the child's best interests.
 "The trial court erred in applying the wrong standard of law.
 "The trial court erred in holding that the grandparent visitation section is not a violation of the Defendant-Appellant's rights under the Fourteenth Amendment to the United States Constitution."
Appellant argues that the trial court abused its discretion in finding that visitation with appellees would be in the minor child's best interest for several reasons. First, appellant states that following the decedent's death, her relationship with appellees deteriorated to a point where appellees were hostile toward her, harassing her and making derogatory comments about members of her family. (Tr. 95-97, 48, 59). Second, appellant points out that testimony was offered concerning the fact that the minor child has certain medical problems which necessitate extra attention and medical care. (Tr. 101-104). Appellant explained that as a result of the minor child's medical condition, she is left only in the care of her maternal grandmother when appellant is working, as both she and the maternal grandmother are nurses. Appellant also contends testimony was presented to indicate that appellees' home was unsuitable for the minor child.
Finally, appellant avers that based upon appellees own testimony, statements would be made to the minor child at some point in the future regarding her maternal grandmother and the decedent's death, which would not be in the child's best interest. (Tr. 48-52, 59). As such, appellant concludes that it would not be in the minor child's best interest to exercise visitation with appellees.
Appellant next contends that the trial court failed to apply the correct standard of law by virtue of the following statement which it made at the conclusion of the hearing in this matter:
 "I can't see any reason why these grandparents ought not have the visitation that the legislature deems appropriate. I have to make the finding that its in the child's best interest, and I'll begin by saying that I haven't found how it can be adverse to the child's best interest and we're going to have to work into this, keeping in mind the fact the child has some medical problems." (Tr. 124).
Appellant suggests that by its comments, the trial court improperly placed the burden upon her to establish that it would not be in the best interest of the minor child in question to exercise visitation with appellees, which is clearly not the intent of R.C. 3109.12(B).
Finally, appellant argues that the granting of visitation rights to appellees violated her constitutional rights under theFourteenth Amendment to the United States Constitution.
Decisions involving visitation are within the sound discretion of the trial court and upon review, an appellate court will not disturb such decision absent a showing of an abuse of discretion. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144.
At common law, grandparents had no legal rights of access to their grandchildren. In re Whitaker (1988), 36 Ohio St.3d 213, 214. As such, their ability to visit their grandchildren was determined by a parent's willingness to extend the privilege. Whitaker, supra. However, Ohio subsequently created a statutory right of grandparent visitation. R.C.3109.051(B) states:
 "(1) In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent, if all of the following apply:
 "(a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.
 "(b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.
 "(c) The court determines that the granting of the companionship or visitation rights is in the best interest of the child."
The Ohio Supreme Court clarified when grandparent visitation rights vest in stating that only an occurrence of a disruptive, precipitating event will trigger visitation. In re Gibson (1991), 61 Ohio St.3d 168,169, citing Whitaker, supra. Such is the situation in the case at bar wherein the father of the minor child in question died. (See, Gibson,supra). Additionally, it should be noted that this court has repeatedly held that generally, the visitation and companionship of a child's grandparents are in a child's best interest. In re Griffiths (1975),47 Ohio App.2d 238, 241; Holley v. Higgins (1993), 86 Ohio App.3d 240,245; and, Brake v. Brake (Jan. 24, 2000), Jefferson App. No. 96-JE-15, unreported.
In determining whether a child's best interest would be served by facilitating visitation with the grandparents, a trial court must consider the factors enumerated in R.C. 3109.051(D).
Finally, the United States Supreme Court recently held in Troxel v.Granville (2000), 530 U.S. 57, that although children should have the benefit from relationships with statutorily specified persons such as grandparents, the Fourteenth Amendment's Due Process Clause has a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests, such as a parent's fundamental right to make decisions regarding the care, custody and control of their children. The United States Supreme Court in Troxel explained that there is a presumption that fit parents act in the best interests of their children and therefore, a parent's decision concerning with whom their children should exercise visitation should be afforded greater deference than has been the practice of courts in the past. The United States Supreme Court in Troxel
concluded that a parent must first make the decision with regards to whether a relationship between a grandparent and child would be beneficial. Thereafter, if a fit parent's determination on such issue becomes subject to judicial review, the court must at least afford some special weight to said parent's own decision. Troxel, supra.
In making such ruling, the United States Supreme Court in Troxel did not find all state statutes regarding grandparents' visitation to be unconstitutional, but rather, indicated that the specific manner in which a statutory standard is applied must not unconstitutionally infringe upon a parent's right to make decisions regarding the care, custody and control of their children.
In the case at bar, we first turn to appellant's contention that the trial court failed to apply the correct standard of law and improperly placed the burden upon her to establish that visitation with appellees would not be in the minor child's best interest. It is clear from a thorough review of the record and testimony on appeal that the trial court remained mindful of the fact it was required to rule in this matter based upon the Abest interests of the child" standard. However, as inTroxel, by failing to afford due deference to appellant's decision with regards to the issue of visitation between the minor child and appellees, the trial court effectively placed the burden of disproving that visitation would be in the minor child's best interest upon appellant. It is noted that appellees do not now claim, nor have they claimed at any point throughout the proceedings in this case, that appellant was an unfit parent.
Additionally, as previously stated, a trial court must consider the factors set forth in R.C. 3109.051(D) in determining whether visitation would be in the best interest of a minor child. Neither in its judgment entry, nor throughout its brief colloquy at the conclusion of the hearing on appellees' complaint, did the trial court articulate specific findings to support its determination that visitation would be in the best interest of the minor child. Furthermore, the trial court did not indicate which factors in R.C. 3109.051(D) it considered and found compelling in reaching its decision. Unlike the circumstances presented to this court in Brake, supra, the trial court's decision in the case at bar was not supported by any analysis set forth by way of findings of fact. As such, this court is unable to assess what efforts the trial court took to assure that all relevant factors in R.C. 3109.051(D) were weighed and considered.
Based upon the United States Supreme Court's recent mandate in Troxel,supra and upon the fact that the trial court failed to set forth any findings of fact identifying relevant factors in accordance with R.C.3109.051(D) to support its decision, it would appear that the trial court abused its discretion in granting appellees visitation with the minor child in question. While remaining mindful of the Abest interests of the child" standard, the trial court must also afford some special weight to appellant's decision with regards to the issue of grandparents' visitation in an effort to protect appellant's fundamental, constitutional rights pursuant to the Fourteenth Amendment of the United States Constitution.Troxel, supra.
Appellant's fourth, fifth and seventh assignments of error are found to be with merit.
Appellant's sixth assignment of error alleges:
 "The trial court erred and abused its discretion by denying the Motion for new trial or Motion for relief from judgment."
Appellant maintains that the trial court abused its discretion in overruling her motion for new trial or alternatively, motion for relief from judgment, as such motion was properly premised upon newly discovered evidence which was relevant to the best interests of the minor child concerning visitation with appellees.
A trial court has broad discretion in determining whether to order a new trial and therefore, we will not substitute our judgment for that of the trial court absent an abuse of discretion. Iames v. Murphy (1995),106 Ohio App.3d 627.
A hearing was held before the trial court on November 3, 1999 on appellant's motion for new trial or alternatively, motion for relief from judgment. Attached to appellant's motion was an affidavit from Michelle Keeling, the decedent's first wife, containing information regarding her experiences with appellees. Appellant testified that although she knew the decedent was married previous to her relationship with him and knew to whom he was married, she did not know the last name of the decedent's first wife or how to contact her. (Motion Tr. 9-10). Appellant stated that she was ultimately able to communicate with Ms. Keeling following the hearing on appellees' complaint for visitation only as a result of contact with Ms. Keeling through appellant's extended family members. (Motion Tr. 6-7). Appellant admitted that she had not originally notified her extended family members about the hearing on appellees' complaint for visitation with the minor child because she felt that it was a private matter. (Motion Tr. 4-5, 10). Appellant also admitted that prior to the hearing on appellees' complaint, she was aware of the fact that the decedent's first wife may have information relevant to the events and relationships within appellees' household. (Motion Tr. 9).
The trial court overruled appellant's motion for new trial or alternatively, motion for relief from judgment, finding in its judgment entry that the information upon which appellant based her motion was reasonably available to her prior to the hearing on appellees' complaint and as such, did not constitute newly discovered evidence.
Appellant admitted that she did not communicate with her extended family members, who may have been able to contact Ms. Keeling, prior to the hearing on appellees' complaint. Appellant further admitted that she was aware of Ms. Keeling's existence and was aware that Ms. Keeling may have information concerning appellees' household, prior to the hearing on appellees' complaint. Therefore, upon a thorough review of the record and testimony on appeal concerning this issue, it cannot be said that the trial court abused its discretion in overruling appellant's motion.
Appellant's sixth assignment of error is found to be without merit.
The judgment of the trial court is affirmed in part and reversed in part and this cause remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
DONOFRIO, J., concurs, VUKOVICH, J., concurs.