[Cite as *State v. Fox*, 2023-Ohio-1912.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-5 |
| | : | |
| v. | : | Trial Court Case No. 22TRC778 |
| | : | |
| KATHY L. FOX | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 9, 2023

. . . . . . . . . . .

ROGER A. STEFFAN, Attorney for Appellee

KONRAD KUCZAK, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Appellant, Kathy L. Fox, appeals from her conviction for operating a vehicle under the influence of alcohol or drugs ("OVI") following a bench trial in the Champaign County Municipal Court. In support of her appeal, Fox raises multiple claims alleging that the State failed to present sufficient evidence at trial to convict her of OVI in violation of Saint Paris Ordinance 73.01(A)(1). For the reasons outlined below, we agree that

there was insufficient evidence to support Fox's OVI conviction. Therefore, the judgment of conviction will be vacated.

**Facts and Course of Proceedings**

{¶ 2} On May 20, 2022, Fox was cited and arrested for OVI in violation of Saint Paris Ordinance 73.01(A)(1), a misdemeanor of the first degree. The citation alleged that Fox had operated her vehicle under the influence of alcohol and/or drugs on the 400 block of State Route (SR) 235 in the Village of Saint Paris, Champaign County, Ohio. Fox pled not guilty to the charge and the matter proceeded to a bench trial on December 13 and 28, 2022.

{¶ 3} At trial, the State presented testimony from David Brown, a motorist who called 9-1-1 and reported erratic driving by Fox on the day she was cited for OVI. The State also presented testimony from Officer Cory Baldwin, a former sergeant with the Saint Paris Police Department who cited and arrested Fox for the OVI in question. The State additionally presented testimony from Lindsie Mayfield, a criminalist with the Ohio State Highway Patrol who tested a urine sample that Fox voluntarily provided to law enforcement. Fox also testified in her defense. The following is a summary of the relevant testimony that was presented at trial.

{¶ 4} At approximately 6 p.m. on May 20, 2022, David Brown was driving behind a silver Toyota vehicle that was traveling northbound on SR 235 toward the Village of Saint Paris. While traveling behind the vehicle, Brown observed that the vehicle was not maintaining a constant speed and crossed over the center and far right lanes of the

roadway multiple times to the extent that Brown felt it was unsafe to pass the vehicle. Brown followed the vehicle for 8 to 10 minutes and "started to get anxious," so he called 9-1-1 to report the erratic driving. Trial Tr. (Dec. 13, 2022), p. 22. After calling 9-1-1, Brown observed a police officer pull the vehicle over on SR 235 "just north of 36." *Id.* at 16. When the State asked if that location was within the Village of Saint Paris, Brown testified: "It was on 235. I don't know." *Id.*

{¶ 5} Ofc. Cory Baldwin identified himself as the officer who pulled the vehicle over in response to Brown's 9-1-1 call. At the time of trial, Baldwin was a deputy for the Madison County Sheriff's Office, but he testified that he had been a sergeant for the Saint Paris Police Department at the time in question. After pulling the vehicle over, Baldwin observed that the driver, later identified as Fox, had pinpoint pupils, slurred speech, abnormally slow speech, and severe dry mouth. When Baldwin asked Fox about her erratic driving, she told him that she had been messing with her GPS and that she had dropped her lipstick on the floor. Baldwin also asked Fox if she had taken any medication that day, to which Fox responded that she had taken her morning medication. However, Fox was unable to tell Baldwin what her morning medication consisted of.

{¶ 6} Based on his observations and his discussion with Fox, Ofc. Baldwin asked Fox if she would be willing to participate in field sobriety testing. In response, Fox advised Baldwin that she had bad knees but would try the tests anyway. When Fox exited her vehicle to participate in the testing, Baldwin observed Fox stumble and have difficulty standing. Baldwin first attempted the horizontal gaze nystagmus ("HGN") test. Baldwin testified that the HGN test did not provide him with any clues due to the extremely

windy conditions, which caused Fox's hair to blow in her eyes. Baldwin next tried the walk-and-turn test and observed that Fox kept stepping off the line, but Baldwin attributed Fox's balance issues to the extremely windy conditions and Fox's bad knees. Baldwin then attempted the modified Romberg test, which resulted in the same balance issues due to the wind and Fox's knees. Because Fox was having difficulty standing and balancing, Baldwin asked her to have a seat in his patrol car for purposes of safety. Baldwin also asked Fox if he could search her vehicle, and Fox agreed.

{¶ 7} After Fox agreed to the search of her vehicle, Ofc. Baldwin called a canine unit for assistance. The canine, Frankie, conducted an open-air sniff and alerted to the driver's side of Fox's vehicle. Thereafter, Baldwin searched the vehicle and found a THC pen, THC refill, and an empty pill bottle. Baldwin observed that the empty pill bottle had a label indicating that the bottle had contained 90 pills of Clonazepam that had just been refilled seven days earlier on May 13, 2022. When Baldwin asked Fox about the empty pill bottle, Fox claimed that she did not know what had happened to the pills and assumed her medication had been stolen. At that point, Baldwin placed Fox under arrest on suspicion of OVI.

{¶ 8} Following Fox's arrest, Ofc. Baldwin asked Fox if she would provide a voluntary urine sample, and Fox agreed. Baldwin thereafter transported Fox to the police station, where she provided a urine sample. The urine sample was forwarded to the toxicology section of the Ohio State Highway Patrol Crime Laboratory for analysis and testing.

{¶ 9} Lindsie Mayfield testified that she was the criminalist who had analyzed and

tested Fox's urine sample. Mayfield testified that the urine sample had tested positive for Clonazepam, which is "the parent drug * * * commonly associated as Klonopin." Trial Tr. (Dec. 28, 2022), p. 51. Mayfield explained that the test results do not give the specific amount of Clonazepam in the system, but she noted that a test is deemed positive if it meets the threshold amount of 50 nanograms per milliliter. Mayfield testified that this information was provided in her report of analysis, which was admitted into evidence as State's Exhibit A.

{¶ 10} In her defense, Fox testified that she had been swerving on the roadway on the date in question due to glancing at the GPS on her cell phone and gusts of wind blowing her around while driving. Fox also testified that she had been prescribed Clonazepam five years earlier for her nerves and anxiety and that, during the time in question, she typically took one milligram of Clonazepam three times a day. Fox testified, however, that she had not taken any Clonazepam within 24 hours of her arrest. Fox also indicated that she no longer took Clonazepam and that it caused her to shake and have speech delays. Fox additionally testified that she had suffered from dry mouth since February 2022.

{¶ 11} After taking the matter under advisement, the trial court issued a written decision on January 17, 2023, finding Fox guilty of the OVI charge at issue. On February 13, 2023, the court sentenced Fox to 30 days in jail with 27 of those days suspended. The trial court also ordered Fox to pay a $650 fine plus court costs.

{¶ 12} Fox now appeals from her OVI conviction and raises three assignments of error, each of which challenges the sufficiency of the evidence used to convict her.

**Waiver**

{¶ 13} As a preliminary matter, we note that Fox did not make a Crim.R. 29 motion challenging the sufficiency of the evidence at trial. Although there is an abundance of case law indicating that such a failure waives the issue of sufficiency for appeal, this court has recognized that "[t]he Supreme Court of Ohio has held that a defendant's 'not guilty' plea preserves the right to object to an alleged insufficiency of evidence, even if the matter is not raised at trial." *State v. Hill*, 2d Dist. Montgomery No. 25274, 2013-Ohio-2016, ¶ 28, citing *State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992) and *State v. Jones*, 91 Ohio St.3d 335, 346-347, 744 N.E.2d 1163 (2001). *Accord State v. Williams*, 2d Dist. Clark No. 2021-CA-66, 2022-Ohio-2517, ¶ 50; *State v. Ropp,* 2d Dist. Champaign No. 2018-CA-44, 2020-Ohio-824, ¶ 30.

{¶ 14} This court has also explained that "even if a defendant could waive a challenge to the sufficiency of the evidence by failing to raise the issue at trial, it would remain subject to plain-error analysis." *State v. Rochowiak*, 2d Dist. Miami No. 2008-CA-12, 2009-Ohio-2550, ¶ 24, citing *State v. Osterfeld*, 2d Dist. Montgomery No. 20677, 2005-Ohio-3180, ¶ 9. "[B]ecause 'a conviction based on legally insufficient evidence constitutes a denial of due process,' a conviction based upon insufficient evidence would almost always amount to plain error." *Ropp* at ¶ 30, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). (Other citations omitted.)

{¶ 15} For the foregoing reasons, we find that the sufficiency-of-the-evidence issue has not been waived for appeal. Because all three of Fox's assignments of error

challenge the sufficiency of the evidence, we will address them together for purposes of clarity.

**Assignments of Error**

{¶ 16} Under her three assignments of error, Fox claims that the evidence presented at trial was insufficient to convict her of OVI in violation of Saint Paris Ordinance 73.01(A)(1), because the evidence failed to establish that: (1) she was within the Village of Saint Paris at the time of the conduct in question; (2) that the Clonazepam detected in her urine was a "drug of abuse"; and (3) there was a nexus between her ingestion of the Clonazepam and her erratic driving.

{¶ 17} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541. "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 18} As previously discussed, Fox was convicted of OVI in violation of Saint Paris Ordinance 73.01(A)(1). That ordinance provides: "No person shall operate any vehicle

*within this municipality*, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." (Emphasis added.) The term "municipality" as used in the Saint Paris Municipal Code denotes "the Village of Saint Paris irrespective of its population or legal classification." Saint Paris Ordinance 10.02.

{¶ 19} We note that Fox was not charged under R.C. 4511.19, which is the state statute governing OVIs. Except for the location of the vehicle's operation, the wording of Saint Paris Ordinance 73.01(A)(1) is almost identical to R.C. 4511.19(A)(1). The only difference is that R.C. 4511.19(A)(1) simply requires the vehicle to have been operated within the State of Ohio, while Saint Paris Ordinance 73.01(A)(1) requires the vehicle to have been operated within the Village of Saint Paris.

{¶ 20} Under her first assignment of error, Fox claims that the State did not present sufficient evidence at trial establishing that she was within the Village of Saint Paris when she engaged in the conduct underlying the OVI offense in question. This court addressed a similar claim in *State v. Monnin*, 2d Dist. Darke No. 1350, 1994 WL 558987 (Oct. 12, 1994). In *Monnin*, the defendant was convicted of OVI and the issue on appeal was whether the evidence presented at the defendant's bench trial established that the defendant had committed the OVI offense within the Village of Versailles. *Id.* at *1. After considering the entire record, this court determined in *Monnin* that the trial court could have reasonably found beyond a reasonable doubt that the defendant had operated a vehicle under the influence of alcohol in the Village of Versailles based on the following:

Officer Coatney [the arresting officer] identified himself as a police

officer for the Village of Versailles. He testified that on the date in question he was "on a routine patrol in my assigned area of the village" meaning "The Village of Versailles", and that Versailles is in Darke County. He testified that he observed the "vehicle in question", and the individual he arrested "in the alleyway to the rear of Sam's Place Bar". (Tr. 26, 27.) The D.W.I. offense report, completed by Officer Coatney and admitted into evidence without objection, identified the individual he arrested as Dale E. Monnin, a "truck driver" by occupation, whose address was 809 East Wood Street, Versailles, Ohio, and stated that the location of the occurrence was the "alley between N. West and Center Street." Officer Coatney identified his own residence as the "Versailles P.D."

*Id.* at *1.

{¶ 21} This court explained in *Monnin* that the trial court could have reasonably found that the offense had occurred within the Village of Versailles because the arresting officer "was a Versailles police officer who testified that he was on patrol within the Village of Versailles when he received the dispatch which took him to the alley between N. West and Center Streets where he observed the vehicle and the individual to whom the dispatch related." *Id.* We also noted that "nothing suggest[ed] that this location was not within the Village of Versailles." *Id.* We further recognized that "[i]t is well known that police officers normally do not effect arrests outside their territorial jurisdiction in the absence of hot pursuit, and nothing of record suggests that this was a hot pursuit situation." *Id.* Therefore, when considering the evidence and "the fact that the trial

judge can be presumed to have some familiarity with the streets and landmarks within the geographic jurisdiction of the court over which he [or she] presides," we concluded that the trial court reasonably determined that the offense occurred within the Village of Versailles. *Id.* at *2.

{¶ 22} In the present case, the trial court did not make any finding with regard to the location of Fox's OVI offense. The evidence presented at trial established that Brown called 9-1-1 after observing Fox driving erratically on SR 235. Specifically, Brown indicated that Fox was traveling north on SR 235 "[t]owards Saint Paris[.]" Trial Tr. (Dec. 13, 2022), p. 14. Brown also testified that he observed an officer pull Fox over "just north of 36." *Id.* at 16. When the prosecutor asked Brown whether Fox had been pulled over within the Village of Saint Paris, Brown responded: "It was on 235. I don't know." *Id.*

{¶ 23} Ofc. Baldwin testified that he was a sergeant for the Saint Paris Police Department at the time in question and confirmed that he was the officer who pulled Fox over in response to Brown's 9-1-1 call. Unlike the officer in *Monnin*, however, Baldwin never testified about where the traffic stop occurred or where he was dispatched. Baldwin also did not provide any testimony indicating that he was on routine patrol in his assigned area of the village when he pulled Fox over.

{¶ 24} That said, the citation charging Fox with OVI and Ofc. Baldwin's written statement of the offense both indicated that Baldwin was on patrol in the Village of Saint Paris and had stopped Fox in the 400 block of SR 235 in the Village of Saint Paris, Champaign County, Ohio. The State, however, did not refer to either of those documents at trial and did not offer them as evidence. The only exhibit offered by the

State was the test results from Fox's urine sample. Therefore, as to Fox's location, we find that the evidence simply established that, on the day in question, Fox was operating her vehicle northbound on SR 235 toward Saint Paris, and that she was cited and arrested for OVI by a Saint Paris police officer at some location on SR 235 that was "just north of 36." In other words, there was no evidence presented at trial establishing that Fox had been within the Village of Saint Paris.

{¶ 25} "Judicial notice permits a court to dispense with proof by evidence where the court is justified in declaring the truth of the matter without requiring evidence." *McKenzie v. Davies*, 2d Dist. Montgomery No. 22932, 2009-Ohio-1960, ¶ 22, citing *State v. Duncan*, 2d Dist. Montgomery No. 9250, 1986 WL 5794, *6 (May 13, 1986), citing Evid.R. 201. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B).

{¶ 26} "Location, as well as other geographical facts, are often times the subject of judicial notice because they are generally known within the territorial jurisdiction of the court and are not subject to reasonable dispute." *State v. Gray*, 4th Dist. Ross No. 97CA2284, 1998 WL 103325, *2, citing 1 Giannelli & Snyder, Evidence (1996) 123-124, § 201.6: McCormick, Evidence (1984 3d Ed.) 926, § 330. *See also United States v. Piggie*, 622 F.2d 486, 488 (10th Cir.1980) ("[g]eography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial"). For example, in *Gray*, the Fourth District Court

of Appeals held that the trial court essentially took judicial notice of the fact that venue had been established where it was uncontroverted that the speeding offense in question occurred on a stretch of SR 138 between Frankfort and Clarksburg, Ohio, and where the trial court opined that it was familiar with that area and found that venue had been sufficiently established. *Gray* at *2.

{¶ 27} Unlike in *Gray*, the trial court in this case did not make any finding with regard to Fox's location, its familiarity with the area in question, or whether Fox was driving within the Village of Saint Paris. Although we stated in *Monnin* that trial judges can be presumed to have some familiarity with the streets and landmarks within the geographic jurisdiction of the court over which they preside, there is nothing in the record indicating that the trial court took judicial notice of whether Fox was within the Village of Saint Paris during the conduct in question. In addition, the State has not asked this court to take judicial notice of the village boundaries, and we decline to do so.

{¶ 28} Based on the evidence presented at trial, we find that even when the evidence is viewed in a light most favorable to the State, the trial court, as the finder of fact, could not have reasonably concluded that Fox was within the Village of Saint Paris during the conduct for which she was convicted. Therefore, the element in Saint Paris Ordinance 73.01(A)(1) requiring Fox to have been operating a vehicle "within the municipality," i.e., within the Village of Saint Paris, was not proven by the evidence. Accordingly, Fox's conviction for violating that ordinance was not supported by sufficient evidence.

{¶ 29} Because there was insufficient evidence to establish that Fox was within the

Village of Saint Paris at the time of the conduct in question, Fox's first assignment of error is sustained.   Having sustained Fox's first assignment of error, we need not address the sufficiency claims raised under Fox's second and third assignments of error, and they are overruled as moot.

## Conclusion

{¶ 30} Fox's conviction for OVI in violation of Saint Paris Ordinance 73.01(A)(1) is vacated.

. . . . . . . . . . . . .

TUCKER, J. and EPLEY, J., concur.