[Cite as *In re M.L.-P.*, 2024-Ohio-5346.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| IN RE: M.L.-P. | : |
| | : |
| | : C.A. No. 30153 |
| | : |
| | : Trial Court Case No. G-2023-002447-01,0A,0D |
| | : |
| | : (Appeal from Common Pleas Court-Juvenile Division) |
| | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on November 8, 2024

. . . . . . . . . . .

CARL BRYAN, Attorney for Appellant

D.L. & J.S., Pro Se Appellees

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Mother appeals from a judgment of the Juvenile Division of the Montgomery County Court of Common Pleas, which granted her minor son's putative paternal grandmother ("Grandmother") nonparent visitation under R.C. 3109.12(A).   Because the

record fails to establish that Grandmother satisfied all the statutory requirements to enable her request for nonparent visitation under R.C. 3109.12(A), Grandmother did not have standing to seek such visitation. Therefore, the trial court erred in failing to dismiss Grandmother's complaint for nonparent visitation and by granting Grandmother visitation time. Accordingly, the judgment of the trial court will be reversed, and the cause will be remanded for the trial court to dismiss Grandmother's action.

**Facts and Course of Proceedings**

{¶ 2} On May 18, 2023, Grandmother filed a pro se complaint for nonparent visitation with her six-year-old grandson, M.L.-P., in the juvenile court. Grandmother also filed an accompanying parent proceeding affidavit as required by R.C. 3127.23(A). The complaint alleged that Grandmother had not seen M.L.-P. in two months and that M.L.-P.' s mother would not respond to Grandmother's attempts to contact her.

{¶ 3} After service of the complaint and affidavit had been perfected on all interested parties, the trial court scheduled the matter for a bench trial on October 13, 2023. Both Grandmother and Mother appeared at trial and acted pro se during the proceeding. Grandmother called her daughter and husband to testify at trial while Mother presented testimony from her aunt. In addition, Grandmother and Mother testified. During their testimonies, both Grandmother and Mother referred to Grandmother's son as M.L.-P.'s father; however, Grandmother did not present any other evidence establishing her son's paternity of M.L.-P. The only exhibits that Grandmother presented at trial were various family photographs, proof of Mother's residence, and some

text messages that Grandmother had exchanged with Mother.

{¶ 4} Following trial, the presiding magistrate made the following findings:

- This case came before the Court for a hearing on the COMPLAINT FOR COMPANIONSHIP TIME filed on May 18, 2023 by the GRANDMOTHER, PRO SE.

- The Court finds that service was perfected to notify the parties of the proceeding.

- Mother was never married to the child's Father.

- Paternal Grandmother had significant involvement with child since birth.

- Every Friday for years, the Child was at Paternal Grandmother's home.

- Child is bonded with Maternal Grandmother [sic].

- For the past year, Paternal Grandmother and Mother have been estranged.  The estrangement occurred after Mother and Father broke up.

- Mother testified that domestic violence occurred between she and Father.

- Mother is not in agreement with Paternal Grandmother's Motion.

Magistrate's Decision and Judge's Order (Nov. 14, 2023).

{¶ 5} Based on these findings alone, the magistrate held that, under Ohio law, the court was permitted to grant Grandmother visitation rights given that Mother was unmarried and because the court found that visitation with Grandmother was in M.L.-P.'s best interest.  The magistrate's decision included no other analysis.   The magistrate's

decision granted Grandmother visitation with M.L.-P. one Saturday a month from 9:00 a.m. to 12:00 p.m. and ordered Grandmother and those in her home not to smoke during Grandmother's companionship time with M.L.-P.

{¶ 6} After the magistrate issued her decision, Mother retained counsel and filed objections and supplemental objections to the decision. In her supplemental objections, Mother raised various arguments, including that Grandmother failed to meet certain statutory requirements in order to have standing to request nonparent visitation. Specifically, Mother argued that R.C. 3109.12(A) required either: (1) paternity to have been acknowledged and finalized under sections 2151.232, 3111.25, or 3111.821 of the Revised Code; or (2) paternity to have been determined in an action under Chapter 3111 of the Revised Code. Mother argued that the magistrate should have dismissed Grandmother's complaint for visitation because there was no evidence in the record satisfying the aforementioned paternity requirement.

{¶ 7} The trial court addressed Mother's objections to the magistrate's decision and made the following findings:

> On August 14, 2023 and August 21, 2023, an administrative hearing was held between Mother and Father to establish an order for child support for the Child. On August 25, 2023, the Montgomery County Child Support Enforcement Agency filed a Juvenile **Administrative** Support Order (Case No. 2023-004162), (the "Support Order"). The Support Order found that "PATERNITY has been established for [the Child] by Acknowledgement of Paternity Affidavit, filed with the Central Paternity Registry after being

signed on March 7, 2017."

Importantly, on August 14, 2023, Mother signed a Waiver of Service for Administrative Support Establishment Hearing and Notice of Objection Process. Specifically, Mother signed an acknowledgement that she had fourteen days from the date that the Support Order was issued to object to the Support Order's decision. Mother never filed an objection.

On September 19, 2023, the Court issued a *Magistrate's Decision and Judge's Order* adopting the Support Order in accordance with R.C. §3111.83.

(Emphasis in original.) Amended Entry Judge's Final Appealable Order (May 17, 2024).

{¶ 8} After making the foregoing findings, the trial court addressed Mother's standing argument and stated the following:

Mother argued that Grandmother's *Complaint for Companionship* should have been dismissed because Father never established that he was the paternal parent of the child through one of the three prescribed means in accordance with R.C. 3109.12(A). R.C. 3109.12(A) provides in relevant part,

. . . If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgement has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code or has been determined in an action under Chapter 3111 of the

Revised Code to be the father of the child . . . any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.

The record reflects that Mother and Father were never married and Father is the paternal parent of the child under Chapter 3111. The September 19, 2023 *Magistrate's Decision and Judge's Order* adopted the Support Order in accordance with R.C. 3111.83 which found that paternity had been established. Importantly, Mother never objected to this finding after signing an acknowledgement of her opportunity to object to the same. Therefore, the Court finds that the Magistrate did not err by not dismissing Grandmother's *Complaint for Companionship*. Mother's first objection is OVERRULED.

(Emphasis in original.) *Id.*

{¶ 9} After finding that Grandmother had standing to petition for nonparent visitation under R.C. 3109.12(A), the trial court analyzed all of Mother's other objections, overruled them, and granted Grandmother visitation as ordered by the magistrate. Mother now appeals from that decision, raising four assignments of error for review. Because it is determinative of the appeal, we will address Mother's fourth assignment of error first.

**Fourth Assignment of Error**

{¶ 10} Under her fourth assignment of error, Mother argues that Grandmother lacked standing to petition for visitation with M.L.-P. under R.C. 3109.12(A) because there was no evidence in the record establishing that the paternity requirement in that statute was satisfied. We agree.

### Standard of Review

{¶ 11} Appellate courts ordinarily review a decision to grant or deny a grandparent's complaint for visitation time for an abuse of discretion. *In re A.R.*, 2023-Ohio-394, ¶ 16 (6th Dist.); *In re F.D.*, 2009-Ohio-4788, ¶ 10 (2d Dist.). However, the issue of "[s]tanding involves entitlement for a determination of the merits of the complaint. Whether the facts establish standing is a question of law, subject to de novo review." *A.R.* at ¶ 17, citing *In re A.G.*, 2020-Ohio-2762, ¶ 13 (6th Dist.), citing *Moore v. Middletown*, 2012-Ohio-3897, ¶ 20. (Other citation omitted.) "De novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.' " *Jackson v. Internatl. Fiber*, 2006-Ohio-5799, ¶ 17 (2d Dist.), quoting *State ex rel. AFSCME v. Taft*, 2004-Ohio-493, ¶ 27 (3d Dist.).

### Standing to Petition for Grandparent Visitation

{¶ 12} "At common law, grandparents had no legal rights of access to their grandchildren." *In re Whitaker*, 36 Ohio St.3d 213, 214 (1988); *accord In re Martin*, 68 Ohio St.3d 250, 252 (1994). Grandparents also "have no constitutional right of

association with their grandchildren." *Martin* at 252, citing *In re Schmidt*, 25 Ohio St.3d 331, 336 (1986). "[I]f grandparents are to have visitation rights, they must be provided for by statute[.]" *Id.*, citing *Whitaker* at 217.

{¶ 13} "The Ohio legislature has enacted several statutes to give standing to nonparents when seeking companionship or visitation rights, to wit, R.C. 3109.11 (visitation when the child's parent has died); R.C. 3109.12 (visitation when a child is born to an unmarried woman); R.C. 3109.051(B)(1) (visitation in a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding); and R.C. 3107.15(C) (visitation with an adopted child)." (Citation omitted.) *In re O.A.*, 2023-Ohio-1782, ¶ 14 (12th Dist.). "[T]he Ohio nonparental-visitation statutes limit the parties who can petition the court for visitation and limit the application of the statutes to cases where there is a specified predicate event or condition." *Harrold v. Collier*, 2005-Ohio-5334, ¶ 41.

{¶ 14} R.C. 3109.12, which is the nonparent-visitation statute that is relevant to this case, states the following:

> . . . If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, . . . the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.

R.C. 3109.12(A).

{¶ 15} Under the plain language of R.C. 3109.12(A), paternal grandparents are not qualified to seek court-ordered visitation rights with their putative biological grandchild until the alleged paternity of the grandchild is established under either of the methods set forth in the statute. *Martin* at 253; *A.R.*, 2023-Ohio-394, at ¶ 24 (6th Dist.). "The statute specifies the type of proof necessary to prove legal paternity, and we must apply the law as written." *A.R.* at ¶ 23. R.C. 3109.12(A) "clearly requires demonstration of legal acknowledgment or legal paternity as provided by specific statutes, and the parties' belief or attitude toward paternity . . . does not substitute for the statutory prerequisites." *Id.* at ¶ 26. Therefore, in the absence of the type of proof required by R.C. 3109.12(A), a paternal grandparent lacks standing to seek visitation rights under R.C. 3109.12(A). *Martin* at 253; *A.R.* at ¶ 23.

{¶ 16} "[A] party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court—even a court of competent subject-matter jurisdiction—over the party's attempted action." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 22, citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 22. (Other citations omitted.) "Lack of standing is certainly a fundamental flaw that would require a court to dismiss the action, . . . and any judgment on the merits would be subject to reversal on appeal." *Id.* at ¶ 23, citing *Schwartzwald* at ¶ 40.

*Grandmother Lacked Standing Under R.C. 3109.12(A)*

{¶ 17} Upon review, we find that the testimony presented at trial sufficiently insinuated that Mother had M.L.-P. as an unmarried woman. There was, however,

absolutely no evidence presented at trial or submitted with Grandmother's complaint and affidavit indicating that Grandmother's son had either: (1) acknowledged his paternity of M.L.-P. and had that acknowledgement finalized pursuant to Revised Code 2151.232, 3111.25, or 3111.82; or (2) had his paternity of M.L.-P. determined in an action under Chapter 3111 of the Revised Code. Mother raised this issue before the trial court in her supplemental objections to the magistrate's decision, and the trial court responded by considering evidence outside the record. Specifically, the trial court made findings that were based on court records from a separate juvenile case involving child support. The trial court found that those court records established that Grandmother's son had been determined to be the paternal parent of M.L.-P. in an action under Chapter 3111 of the Revised Code.

{¶ 18} In *Tyler v. Tyler*, 2016-Ohio-7419 (2d Dist.), this court held that the trial court had erred by considering evidence outside the record when ruling on objections to a magistrate's decision. *Id.* at ¶ 2 and ¶ 29. The trial court in *Tyler* considered court records from the appellant's divorce action when ruling on the appellant's objections to a civil protection order that had been granted by a magistrate. We explained that "[h]ad the trial court intended to take judicial notice of matters in the divorce action, it should have given notice to the parties, and given the parties an opportunity to respond." *Id.* at ¶ 29.

{¶ 19} Also, in *In re J.C.*, 2010-Ohio-637 (9th Dist.), the Ninth District Court of Appeals held that the trial court had committed reversible error in a permanent custody case where the trial court considered evidence outside the record. The trial court in *J.C.*

sua sponte took judicial notice of its own docket, entries, and files in order to determine whether the children at issue had been in the temporary custody of the children services agency for the requisite period of time. *Id.* at ¶ 13. The record on appeal did not include any of the information that the trial court was able to glean from the materials of which it took judicial notice. *Id.* at ¶ 14. The appellate court stressed that "[t]he [trial] court was bound to consider only that evidence that was presented in the case before it." *Id.* at ¶ 16. Because the evidence relied on by the trial court was not part of the record, and because the evidence that was in the record did not support the trial court's permanent custody decision, the appellate court reversed the trial court's grant of permanent custody to the children services agency. *Id. See also State v. Bayliff*, 2010-Ohio-3944, ¶ 27 (3d Dist.) (holding that "it was impermissible for the trial court to consider evidence outside the record and conduct its own investigation of the facts" and that "[t]here is no authority for a trial court's independent investigation").

{¶ 20} Similar to *J.C.*, the trial court in this case sua sponte took judicial notice of child support records in a separate juvenile case when ruling on Mother's standing argument. We note that "[j]udicial notice permits a court to dispense with proof by evidence where the court is justified in declaring the truth of the matter without requiring evidence." (Citations omitted.) *McKenzie v. Davies*, 2009-Ohio-1960, ¶ 22 (2d Dist.). "The taking of judicial notice is governed by Evid.R. 201." *Id.* Pursuant to Evid.R. 201(B): "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." *State v. Fox*, 2023-Ohio-1912, ¶ 25 (2d Dist.), citing Evid.R. 201(B). A court may take judicial notice at any stage of the proceeding whether it is requested or not. Evid.R. 201(C) and (F).

**{¶ 21}** "Historically, we have held that a trial court was not permitted to take judicial notice of the record in other litigation, even when that action was before the same court." *State ex rel. Harris v. Capizzi,* 2022-Ohio-3661, ¶ 17 (2d Dist.), citing *Roberts v. Jackass Flats, L.L.C.*, 2016-Ohio-610, ¶ 12, *MacConnell v. Dayton*, 2013-Ohio-3651, ¶ 14, fn. 2 (2d Dist.), and *Davis v. Haas*, 2011-Ohio-5201, ¶ 19 (2d Dist.). "The rationale for that approach was that when judicial notice is taken of proceedings in another case, those proceedings are not part of the record as defined in App.R. 9, and whether the trial court correctly interpreted such proceedings was not reviewable by an appellate court." *Id.*, citing *Haas* at ¶ 20.

**{¶ 22}** "It is now well established that we may take judicial notice of judicial opinions and public records accessible through the Internet." *Id.* at ¶ 18, citing *Huber Hts. Veterans Club, Inc. v. Bowman*, 2021-Ohio-3944, ¶ 22 (2d Dist.); *Clark v. Beyoglides*, 2021-Ohio-4588, ¶ 6, fn. 1 (2d Dist.); *State v. Reed*, 2019-Ohio-3295, ¶ 23 (2d Dist.); *State v. Bevers*, 2018-Ohio-4135, ¶ 13 (2d Dist.). Indeed, "[i]t is common practice for courts to take judicial notice of publicly accessible online court dockets." *Id.*, citing *State v. Estridge*, 2022-Ohio-208, ¶ 12, fn. 1 (2d Dist.). "Juvenile court cases, however, are not publicly available." *Id.* at ¶ 19. In *Capizzi*, we held that it was inappropriate to take judicial notice of court records that were not readily accessible over the internet. *Id.*

**{¶ 23}** Here, the juvenile court child support records that the trial court relied on

when making its standing determination are not accessible over the internet. Accordingly, it was inappropriate for the trial court to take judicial notice of the child support records, because this court cannot review whether the trial court correctly interpreted the child support records given that they are not part of the record on appeal and are not publicly accessible.

{¶ 24} Although Grandmother was acting pro se and was likely unaware of the evidentiary requirements of R.C. 3109.12(A), the fact remains that "[l]itigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants." (Citation omitted.) *Yocum v. Means*, 2002-Ohio-3803, ¶ 20 (2d Dist.). Because Grandmother presented no evidence indicating that her son's paternity of M.L.-P. had been established by the methods required under R.C. 3109.12(A), and because the trial court was not permitted to consider evidence outside the record or take judicial notice of the child support records that allegedly established paternity under Chapter 3111 of the Revised Code, the trial court erred by finding that Grandmother had standing to petition for visitation under R.C. 3109.12(A). Grandmother's lack of standing vitiates her ability to invoke the jurisdiction of the trial court over her complaint for nonparent visitation. Accordingly, the trial court should have dismissed Grandmother's complaint as opposed to granting her visitation time.

{¶ 25} Mother's fourth assignment of error is sustained.

**First, Second, and Third Assignments of Error**

{¶ 26} Under her first, second, and third assignments of error, Mother challenges

the trial court's judgment granting Grandmother nonparent visitation on the following grounds: (1) the trial court's application of R.C. 3109.12(A) violated Mother's constitutional right to due process; (2) the trial court did not give proper weight to Mother's wishes; and (3) the trial court did not properly weigh the best interest factors set forth under R.C. 3109.051(D). Upon review, we find that our resolution of Mother's fourth assignment of error renders all of the aforementioned arguments moot. Accordingly, Mother's first, second, and third assignments of error are overruled as moot.

## Conclusion

{¶ 27} Having sustained Mother's fourth assignment of error, and having overruled Mother's remaining assignments of error as moot, the judgment of the trial court is reversed, and the cause is remanded for the trial court to file an order dismissing Grandmother's complaint.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.